**Opinion filed April 29, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00147-CR
_____

**BURT LEE BURNETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law**

**Taylor County, Texas**

**Trial Court Cause No. 1-662-13**

## O P I N I O N

The jury convicted Appellant of driving while intoxicated and of unlawfully carrying a weapon. *See* TEX. PENAL CODE ANN. §§ 46.02(a), 49.04 (West Supp. 2015). The trial court assessed Appellant's punishment at 120 days in county jail for each conviction. The court suspended each sentence and placed Appellant on

community supervision for a term of eighteen months. The court also assessed a fine in the amount of $2,000. We reverse and remand.[1]

Appellant presents two issues for our review. In his first issue, Appellant argues that the trial court erred when it admitted evidence regarding Appellant's possession of painkillers. Appellant asserts in his second issue that the trial court erred when it instructed the jury that it could convict Appellant for driving while intoxicated if it found that Appellant was intoxicated by reason of the introduction of drugs into his system. Both of these arguments center on Appellant's contention that there was no evidence that the painkillers contributed to Appellant's intoxication.

The facts of this case are quite simple. Appellant rear-ended a vehicle, and the accident rendered Appellant's vehicle inoperable. Abilene Police Officer Clinton Lance Coapland arrived on the scene to investigate the accident. After noticing that Appellant had slurred speech and after smelling alcohol on Appellant's breath, Officer Coapland began a DWI investigation in which he administered field sobriety tests. Based on the results of the field sobriety tests, Officer Coapland believed that Appellant was intoxicated. Officer Coapland arrested Appellant and searched his person. He found twenty white pills and one blue pill in Appellant's jacket pocket. Officer William Jacob Allred assisted in the accident investigation, and he found pills and a pill bottle in Appellant's vehicle. The officers did not take the pill bottle into evidence.

---

[1]On appeal, Appellant prays that we reverse his convictions for driving while intoxicated and for unlawfully carrying a weapon. Although Appellant does not raise a specific issue as to his conviction for unlawfully carrying a weapon, the State charged Appellant with committing that offense by carrying a handgun while he was engaged in the criminal activity of driving while intoxicated. The jury was instructed to proceed to determine whether Appellant was guilty of unlawfully carrying a weapon if it first found that Appellant was guilty of driving while intoxicated. This case has but one judgment for both counts and convictions.

The State charged Appellant with driving and operating a motor vehicle in a public place "while intoxicated by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, and any other substance into his body." Appellant objected prior to trial to the officers testifying as to what type of pills were found in Appellant's pocket and car because the officers were not experts in drug recognition. The trial court agreed that the officers should not speculate as to what type of pills were found. The court sustained Appellant's objection and granted a motion in limine as to that issue.

The parties continued to discuss the issue before the trial began. During the discussion, the State informed the trial court that the video of the incident depicted Appellant and the officers discussing the pills. The trial court asked to see the exchange between Appellant and the officers. The video showed that Officer Coapland found the pills in Appellant's jacket and handed them to Officer Allred, who examined them. Officer Allred said that they looked like hydrocodone and asked Appellant whether he had a prescription for them. Appellant responded, "Yes." After the court reviewed the relevant portions of the video, the State offered the evidence of the pills as same transaction contextual evidence. Appellant's trial counsel agreed that the State did not have to present its case in a vacuum; however, under the facts of this case, trial counsel argued that admitting evidence of possession of the pills would be substantially more prejudicial than probative where the State had no evidence to show that the pills were actually in Appellant's system. The trial court ruled that the evidence was admissible as same transaction contextual evidence. In light of the trial court's ruling, Appellant's counsel also objected under TEX. R. EVID. 403, 702, and 703. He further objected that the admission of the evidence would violate Appellant's right to due process,

3

right to a fair trial, right to due course of law, and right of confrontation. The trial court overruled these additional objections.

In Appellant's first issue, he asserts that the trial court erred when it admitted evidence that he possessed the pills. The State argues that Appellant waived this complaint because he opened the door to the admissibility of the evidence when, in his opening statement, defense counsel told the jury about the officers finding the pills. Appellant responds that the trial court ruled on the admissibility of the evidence in a pretrial hearing and that he was permitted to refer to the evidence "in an effort to meet, rebut, destroy, deny or explain the improperly admitted evidence." *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (op. on reh'g). The State contends that, even though it is true that the trial court had ruled on the admissibility of the evidence, it later limited the amount of the evidence the State was allowed to present. We do not see in the record where the trial court limited the admissibility of evidence about the pills. The prosecutor asked if she could make sure that the police officer did not identify the pills as hydrocodone, but the trial court never changed its final pretrial ruling in which it overruled all of Appellant's objections to the admissibility of the pills in general and to the identification of the pills in the video. Regardless of whether Officer Coapland was allowed to identify the pills, the trial court allowed the jury to watch the video in which Officer Allred identified the pills. Therefore, because the admissibility of the evidence had already been decided by the trial court, we cannot say that Appellant, during opening statements, opened the door to the admissibility of evidence regarding the pills.

As Appellant explains in his brief, "error is not waived when the evidence is brought in later in an effort to meet, rebut, destroy, deny or explain the improperly admitted evidence." *Id.* Here, defense counsel was explaining that Appellant had a prescription for the pills due to a back injury and that Appellant had the pills in his pocket because the pill bottle stuck out of his pocket and was uncomfortable.

Defense counsel also told the jury that it would hear how Officer Coapland was unsure whether Appellant had been drinking but that Officer Coapland believed that Appellant may have been intoxicated by the pills. Defense counsel did not discuss the pills in front of the jury until after the trial court had already ruled that the evidence was admissible. If defense counsel had simply told the jury that the officers found hydrocodone in Appellant's pocket without explaining to the jury why Appellant had it in his pocket, waiver might apply. However, under the facts of this case, we cannot say that Appellant waived error. While defense counsel's emphasis on the pills throughout the trial may be relevant to a harm analysis, it does not show that Appellant has waived his complaint for our review.

During the discussions about the admissibility of evidence regarding the pills, the trial court explained that it was concerned that the evidence was not relevant to the charged offense of intoxication without some evidence that the drugs were in Appellant's system. We note that the type of intoxicant is not an element of driving while intoxicated but that, instead, it is an evidentiary matter. *See Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004) (holding that the substance that causes intoxication is not an element of the offense of DWI; "[i]nstead, it is an evidentiary matter"). We also note that when the State seeks to prove intoxication by the introduction of drugs or a controlled substance, its evidence must be supported by expert testimony that is relevant and reliable. *See Kaleta v. State*, No. 11-02-00142-CR, 2003 WL 1571583, at *3–4 (Tex. App.—Eastland Mar. 27, 2003, pet. ref'd) (not designated for publication) (relying on and quoting *Smithhart v. State*, 503 S.W.2d 283, 286 (Tex. Crim. App. 1973), for the proposition that expert testimony is required to show intoxication by drugs or a controlled substance; "[u]nlike alcoholic intoxication, which is 'of such common occurrence' that its recognition requires no expertise . . . , this court is unable to say that such is the case with being under the influence of drugs"); *see also Kelly v. State*, 824 S.W.2d 568, 572 (Tex.

Crim. App. 1992) (expert testimony must be relevant and reliable to be admissible). Ultimately, the trial court determined that evidence related to possession of the pills was admissible as same transaction contextual evidence, a type of background evidence that can be admitted under certain circumstances. *See Rogers*, 853 S.W.2d at 33 ("same transaction contextual evidence" is one of two types of background evidence). Because the trial court admitted the evidence as same transaction contextual evidence, we will first determine whether admission under such reasoning was in error.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We will reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.* When determining the admissibility of background evidence, we use a two-part test. *Rogers*, 853 S.W.2d at 32. First, we must look to whether the evidence is relevant under Rule 401. *Id.* If the evidence is relevant, we next look to whether the evidence is admissible under an exception to Rule 404(b). *Id.*

Rule 401 provides that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401. We do not see how evidence of prescription pills at the scene of the offense has any tendency to make the existence of Appellant's intoxication more or less probable when there is no evidence to show that Appellant took any of the pills, that the pills were of a type that would have had an intoxicating effect on Appellant (or even what the side effects of the pills were in general), or that he was intoxicated as a result of taking the pills. *See, e.g.*, *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013) (citing *Layton v. State*, 280 S.W.3d 235, 242 (Tex. Crim. App. 2009)) ("Our holding in *Layton* makes clear that a defendant's admission to taking drugs is relevant to show

6

intoxication only with competent testimony as to the effect of the drug on the defendant."). The prescription bottle itself was not collected for evidence, nor was it admitted into evidence at trial.[2] Although defense counsel told the jury that it could assume that Appellant was taking the medicine according to his prescription, the jury had no evidence before it to show when or how often Appellant was supposed to take the medicine or to show that he actually did take it and that it contributed to his intoxication. Officer Coapland told the jury that, when he found the twenty white pills and one blue pill wrapped up in a "make-shift baggie" in Appellant's jacket pocket, he thought, "[W]ow, this could have been what he's more intoxicated on." The prosecutor asked, "And is that what you're referring to? Is that -- maybe it wasn't only --"; Officer Coapland responded, "Right." However, defense counsel objected to this testimony on the grounds that it was conjecture and speculation. The State agreed, and the trial court instructed the prosecutor to restate her question. Although there was no request for the jury to disregard this testimony, the speculative testimony was unreliable and irrelevant. *See Acevedo v. State*, 255 S.W.3d 162, 169 (Tex. App.—San Antonio 2008, pet. ref'd) (concluding that expert's testimony was "merely speculative and, thus unreliable and irrelevant"). Furthermore, Officer Coapland later clarified that, based on the tests that he performed and based on the fact that he was not certified to detect drug impairment, there was no evidence that Appellant was intoxicated on anything but alcohol.

Even if we assumed that the evidence related to the pills was relevant, it was not admissible as an exception to Rule 404(b) under the facts of this case. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular

---

[2]Defense counsel attempted to discuss the information contained on the prescription bottle with Officer Allred; however, the State objected to its admission on hearsay grounds, and the trial court sustained the objection.

occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). The rule further provides that evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). Extraneous offense evidence may be admissible for purposes other than those expressly listed, such as when the evidence is found to be same transaction contextual evidence. *Rogers*, 853 S.W.2d at 33; *Montgomery*, 810 S.W.2d at 388. Same transaction contextual evidence is evidence of other offenses connected with the primary offense. *Rogers*, 853 S.W.2d at 33 (citing *Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991)). Such evidence is admissible as an exception under Rule 404(b) where the evidence is necessary to the jury's understanding of the instant offense. *Id.* The jury is entitled to know what happened immediately before and after the commission of the charged offense so that it may realistically evaluate the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). As both parties have instructed, offenses do not occur in a vacuum. *See id.* "[E]vidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense may be admissible as relevant evidence to explain the context of the offense for which the defendant is on trial." *Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992).

First, we are not convinced that Appellant's possession of the pills is evidence of another offense in this case. The Texas Health and Safety Code provides that a person commits an offense if the person possesses hydrocodone without obtaining the drug from a pharmacist by a prescription. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(A), 481.115(a), 481.117(a) (West 2010), § 481.104(a)(4) (West Supp. 2015). Here, the trial court allowed the pills to be identified as hydrocodone because Officer Allred said they looked like hydrocodone and asked Appellant whether he had a prescription for them. Appellant responded, "Yes." At oral

argument, the State represented that it was illegal to carry prescribed medications outside of its original container as it was delivered by the pharmacist. We have not been able to locate such a law. Based on the representations in the trial court and on the representations during oral argument, it appears that everyone agreed that Appellant had a prescription for the hydrocodone but that the pills were not in the prescription bottle at the time of his arrest. We note that the officers also found a blue pill. We have assumed that the white pills were hydrocodone; however, the evidence does not confirm that. And the evidence sheds no light on the identity of the blue pill. Without further knowledge of the identity of the pills it is impossible to know whether Appellant was committing an offense.

Second, even if Appellant's possession of the pills was unlawful and constituted a separate offense, this is not a case in which the evidence related to the pills is necessary to the jury's understanding of the instant offense. This was not a crime spree in which multiple offenses occurred in a short amount of time or in which one offense occurred to further another offense, such as committing theft in order to purchase and possess more drugs. This was a simple case in which the jury was required to determine whether Appellant was driving while intoxicated. We cannot say that evidence of the pills was so intertwined with the charged offense that it was necessary to explain the context of the DWI. Under the facts of this case, evidence related to the pills could only be necessary to the jury's understanding of the instant offense if there was evidence that Appellant's intoxication was caused from ingesting the pills. As we have discussed, there is no such evidence. Therefore, the trial court abused its discretion when it admitted the pills and evidence related to the pills as same transaction contextual evidence.

The State argues that, even if the evidence was not admissible under the reasoning used by the trial court, the evidence was admissible "because it was indicative of the definition of intoxication." The State asserts that it is not required

to prove the intoxicant that caused Appellant's intoxication. *See Gray*, 152 S.W.3d at 132 (holding that the substance that causes intoxication is not an element of the offense of DWI). As we have stated, we agree that the State is not required to allege and prove a particular intoxicant. But, the fact that the specific intoxicant is not an element of the offense does not give the State free reign to introduce possible intoxicants found at the scene in order to show intoxication when the State does not link the possible intoxicant to the defendant's intoxicated state by competent expert testimony. *Compare Delane v. State*, 369 S.W.3d 412, 422, 424 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding admission of officer's testimony regarding medications and their effects on defendant was reversible error when officer admitted that he was not a drug recognition expert and the evidence showed that he did have the requisite knowledge, training, or experience to testify about the medications), *with Everitt v. State*, No. 01-10-00504-CR, 2014 WL 586100, at *6 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, no pet.) (mem. op. on remand, not designated for publication) ("Officer LaSalle's testimony that Everitt showed signs of impairment consistent with the use of hydrocodone supplied a logical connection between Everitt's admitted use of hydrocodone and his driving. As such, this testimony was relevant."), *and Armstrong v. State*, No. 05-10-01214-CR, 2012 WL 864778, at *2 (Tex. App.—Dallas Mar. 15, 2012, no pet.) (not designated for publication) (trial court did not abuse its discretion when it admitted opinion testimony of officer regarding whether ingestion of Xanax caused intoxication where State established that officer was a qualified drug recognition expert). We recognize that intoxication by alcohol "is 'of such common occurrence' that its recognition requires no expertise." *Smithhart*, 503 S.W.2d at 286 (quoting *Inness v. State*, 293 S.W. 821, 822 (Tex. Crim App. 1926)). However, when the State offers evidence of a substance that could cause a person to become intoxicated, it must do so with more than mere speculation. As we have stated, merely speculative testimony is

unreliable and irrelevant. *Acevedo*, 255 S.W.3d at 169 (concluding that expert's testimony regarding the hypothetical effects of methamphetamine was merely speculative because he did not know any of the particular facts of the case, such as how much, or precisely what, the defendant ingested and when he ingested it).

Furthermore, even if the fact that pills were found in Appellant's pocket was relevant to show intoxication, we are not convinced that the State properly identified the pills prior to admission. Initially, the trial court sustained defense counsel's objection that the officers could not testify as to what type of pills were found in Appellant's pocket and car because the officers were not experts in drug recognition. Defense counsel's objections were based on Rules 702 and 703 of the Texas Rules of Evidence, which govern the admissibility of expert testimony. After further discussion, the trial court determined that the pills were admissible because Appellant, himself, acknowledged that he had a prescription for the pills after Officer Allred said that they looked like hydrocodone. It is clear from the evidence that there were at least two types of pills found at the scene; white pills and a blue pill. As we have explained, we have assumed that "hydrocodone" was used in reference to the white pills; however, there is no evidence that establishes which pills were hydrocodone, whether all the white pills were hydrocodone, or whether the blue pill was hydrocodone or some other type of drug. The State did not show that the officers were qualified to identify the pills, nor did the State present any evidence as to the chemical makeup of the pills. Therefore, the evidence related to the pills was also inadmissible because the State failed to properly identify the types of pills that Appellant possessed. *See Stewart v. State*, 718 S.W.2d 286, 289 (Tex. Crim. App. 1986) (the identity of a controlled substance is generally determined by chemical analysis).

Having determined that the trial court erred, we must now determine whether the error is reversible under TEX. R. APP. P. 44.2(b), which applies to

nonconstitutional errors. Pursuant to Rule 44.2(b), an error is not reversible error unless it affects a substantial right of the defendant. A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An accused's substantial rights are not affected by the erroneous admission of evidence if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). One of the things that we consider, in examining the record as a whole, is the jury charge instruction given by the trial court. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (listing jury instructions as one area of the record that the appellate court should consider when conducting a harm analysis). Because Appellant's second issue alleges that the trial court erred when it included the full definition of "intoxication" in the jury charge, we will first address whether such an instruction was error.

Appellant argues in his second issue that the trial court erred when it instructed the jury that it could convict Appellant for driving while intoxicated if it found that Appellant was intoxicated by reason of the introduction of drugs into his system. Appellant contends that, because there was no evidence that Appellant's intoxication was caused by anything other than alcohol, the trial court should have limited the definition of intoxication in the jury charge. The State responds that the jury charge tracked the language of the indictment and the statutory definition of "intoxicated"; therefore, the trial court did not err when it included the full definition of "intoxicated" in the charge.

The State is correct in that the jury charge tracked the language of the indictment and of the statutory definition of "intoxicated." The charge instructed the jury that "intoxicated" meant "the person does not have the normal use of his or

her mental or physical faculties because of taking into his or her body alcohol, drugs, a controlled substance, or a combination of those, or any other substance." The application paragraph instructed the jury that it should find Appellant guilty if it found that he was driving in a public space "while intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into his body."

Appellant's trial counsel objected to the inclusion of the full definition of intoxication in the jury charge and argued that the definition should have been limited to alcohol consumption. Counsel requested that the definition in the charge not include the language: "drugs, a controlled substance, or a combination of those or any other substance." Counsel also requested that the language, "a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances, or any other substance into his body" be removed from the application paragraph. The trial court overruled Appellant's objections.

The trial court is responsible for instructing the jury on the law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "It is not enough for the charge to merely incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts adduced at trial." *Gray*, 152 S.W.3d at 127. "Jury charges which fail to apply the law to the facts adduced at trial are erroneous." *Id.* at 128. The Court of Criminal Appeals has suggested that it could be error to include the full definition of intoxication if there is no evidence to show intoxication by means other than alcohol. *See Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011) ("[W]hen only a portion of the statutory definition is relevant to the elements of the offense, giving the whole statutory definition may be error.").

13

The court in *Ouellette* did not have to reach this question, however, because the officer testified that Soma, one of the types of prescription pills the officer found in the defendant's car, was a central nervous system depressant that was capable of causing the horizontal-gaze nystagmus that he observed during the field sobriety tests. *Id.* at 869–70. The court explained that the officer's testimony provided evidence from which a rational juror could have found that the defendant consumed the drug and that the drug caused the defendant's intoxication. *Id.* at 870. The arresting officer also testified that the defendant's breath smelled of alcohol and that she told him that she had drunk a glass of wine earlier in the evening. *Id.* at 869. The court concluded that the jury charge, which included the full definition of intoxication, reflected the law as it applied to the evidence produced at trial. *Id.* at 869–70.

As we have discussed, in the case before us, there is no competent testimony upon which a rational juror could have found that Appellant consumed hydrocodone and that such consumption contributed to his intoxication. *See Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007) ("juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions"; "[a] conclusion reached by speculation . . . is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt"). Because only a portion of the statutory definition is relevant to the facts of this case, we hold that the trial court erred when it included the whole definition of intoxication in both the definition section and application paragraph of the jury charge.

Having found that the trial court erred, we must now determine whether the error was harmful. A properly preserved error in the jury charge requires reversal if the error was calculated to injure the rights of the defendant, meaning that reversal is required if the accused suffered some harm from the error. CRIM. PROC. art. 36.19 (West 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The

actual degree of harm caused by the error must be determined in light of the entire jury charge; the state of the evidence, including the contested issues and the weight of the probative evidence; the argument of counsel; and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171. We note that the standard for reviewing jury charge error is different than the standard for reviewing nonconstitutional errors, such as admissibility errors, under Rule 44.2(b). Pursuant to Rule 44.2(b), an error is not reversible error unless it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson*, 43 S.W.3d at 4; *King*, 953 S.W.2d at 271. We will first address whether Appellant suffered some harm under *Almanza*.

The parties in this case did not discuss the pills during voir dire. As we have highlighted, defense counsel brought up the issue of the pills during opening statements and explained to the jury that Appellant had a prescription for the pills. The State did not mention the pills during its opening statement; however, the State did play the entire video for the jury, which showed that Officer Coapland found the pills and which showed the discussions between the officers and Appellant about the pills. The State also introduced the actual pills into evidence.

When Officer Coapland testified before the jury, he explained that he was trained "just to identify nystagmuses if they are caused by alcohol." The prosecutor asked, "And what did you believe that intoxication was due to?" Officer Coapland responded, "I knew that he didn't have his mental and physical faculties. And the way we're trained is off of an alcoholic beverage." However, Officer Coapland also told the jury that, when he found the twenty white pills and one blue pill wrapped up in a "make-shift baggie" in Appellant's jacket pocket, he thought, "[W]ow, this could have been what he's more intoxicated on." During cross-examination, Officer Coapland agreed that he had not received any advanced training on drug recognition and that he was not qualified to recognize impairment due to anything

15

other than alcohol. He also agreed that he was not qualified to examine a pill and identify its type. Officer Coapland further agreed that, based on the tests that he performed and based on the fact that he was not certified to detect drug impairment, there was no evidence that Appellant was intoxicated on anything but alcohol. Officer Coapland did not mention in his report that Appellant had a prescription for the pills, nor did he take pictures of the pill bottle that was found by Officer Allred.

Officer Allred briefly testified about the pills. He initially told the jury that there was not a bottle of pills in the car, only that there were loose white pills in a satchel. Officer Allred subsequently testified that he did see a prescription bottle in the car but it was not in the satchel. Officer Allred did not take the pill bottle into evidence.

In addition to the several discussions regarding the pills during the officers' testimony, defense counsel also elicited testimony from Officer Coapland about all of the things that Appellant did during the investigation that showed behavior that was consistent with being sober. Officer Coapland agreed that Appellant only slurred twice and that usually people who are intoxicated slur during the entire conversation. He also agreed that Appellant was able to get out of the car, hand over his driver's license, walk across the street, and provide personal information without any problems. Officer Coapland further testified that Appellant did not have blood shot or watery eyes, he had not soiled his clothes, and he did not use abusive language.

The State briefly discussed the pills in its closing argument. The prosecutor said, "[Y]ou can't consider that there wasn't a pill bottle taken into evidence. You can consider, (indicating), somewhere, there are pills in evidence." She continued, "You heard the officer. He found a pill bottle. It might have been . . . for hydrocodone. He has no idea how many pills were in there, what the dosage was. Those are things we don't know and you can't consider it." The prosecutor reminded

the jury of the officer's testimony regarding his administration of the field sobriety tests and regarding his belief that Appellant was intoxicated based on Appellant's performance of the tests. Specifically, she told the jury, "You heard him say, 'After I found the pills, I didn't know what it was from.' He believed him to be intoxicated. He had lost the normal use of mental or physical faculties." The prosecutor also told the jury the definition of intoxication as it was defined in the charge.

Defense counsel discussed the pills during its closing argument as well. Counsel highlighted that Appellant had a prescription for the pills and specifically said, "You could assume that he was taking his medication as prescribed. But that did not cause him to be intoxicated. There is nothing that prevents one from taking that kind of a medication and driving." Counsel reminded the jury that Officer Coapland had testified that there was no evidence that the intoxication was due to anything other than alcohol and that, even if Appellant had taken the pills and was under the influence of those pills, the clues that he observed did not show that Appellant was under the influence of the pills. Counsel emphasized that "it's clear that he was not under the influence of alcohol or hydrocodone to the degree that he would have lost his normal mental or physical faculties."

Our review of the record shows that both defense counsel and the State emphasized the possession of the pills in this case. Evidence related to the pills was intertwined throughout the trial, and the State implied in its closing argument that Appellant could have been intoxicated due to the pills. Although we recognize that defense counsel made it very clear to the jury that there was no evidence of intoxication based on the pills, the jury still had evidence related to the pills before it. Because the pills became an integral part of this case and because the jury was permitted to find Appellant guilty of intoxication based on the introduction of pills into his system, we find that the jury charge error in this case caused the accused to suffer some harm. Having found that Appellant suffered some harm under *Almanza*,

17

it is not necessary for us to address whether the improper admission of the pills was harmful error under Rule 44.2(b).  *See* TEX. R. APP. P. 47.1.

We reverse the judgment of the trial court and remand this cause to the trial court for further proceedings not inconsistent with this opinion.


JIM R. WRIGHT

CHIEF JUSTICE


April 29, 2016

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.