Isaac Uyi OMORUYI, Appellant

v.

The STATE of Texas, Appellee

No. 06-17-00020-CR

Court of Appeals of Texas, Texarkana.

Date Submitted: April 21, 2017

Date Decided: June 21, 2017

William K. Gleason, Attorney at Law, 117 Lafayette, Jefferson, TX 75657, for appellant.

Ricky Shelton, Assistant County Attorney, 102 West Austin, Room 201, Jefferson, TX 75657, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Chief Justice Morriss

While Isaac Uyi Omoruyi and Rebecca Braghini were stopped along a highway in Marion County by Texas Department of Public Safety Trooper Kurt McKinney, McKinney discovered in their small vehicle, directly behind the passenger seat in which Omoruyi had been sitting, a number of blank credit or debit cards, a card embossing machine, a card reloader, sandpaper, a sock, three laptop computers, a card printer users' manual, and, more importantly, two specific debit cards that were later specifically described in the indictment against Omoruyi for credit/debit card abuse. *See* TEX. PENAL CODE ANN. § 32.31 (West 2016). To be precise, the indictment alleged that Omoruyi committed credit/debit card abuse by possessing

> two incomplete debit cards, namely, a Visa number 4076 1111 2222 3333 debit card and a MasterCard number 5249 0500 0176 8097 debit card, which cards had been issued to [sic] Visa and MasterCard, respectively, and the defendant possessed each of the cards without the card having been issued to him and with intent to complete them. . . .

*See* TEX. PENAL CODE ANN. § 32.31(b)(9).

A Marion County jury convicted Omoruyi and assessed two years' confinement and a fine of $1,000.00, assessments incorporated into the trial court's judgment. On appeal, Omoruyi asserts that the evidence is legally insufficient to support the judgment and that the failure to instruct the jury with the statutory definition of "incomplete" caused him egregious harm. Because (1) legally sufficient evidence supported Omoruyi's conviction, but (2) omitting the statutory definition of "incomplete" was egregiously harmful, we reverse the judgment of the trial court and remand this matter to the trial court for a new trial.

*(1) Legally Sufficient Evidence Supported Omoruyi's Conviction*

■ Omoruyi asserts that the evidence was legally insufficient to sustain his conviction and focuses his argument on the single element that the two cards were incomplete. Though there was scant evidence that the cards were incomplete, the two cards themselves were in evidence. Because of what the cards themselves revealed, we find legally sufficient evidence to support the conviction.

In evaluating the evidence for legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

█ Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Omoruyi committed the offense of debit card abuse, as indicted in this case,

if he possesse[d] two or more incomplete . . . debit cards [described in the indictment] . . . not . . . issued to him[,] with intent to complete them without the effective consent of the issuer. For the purposes of this subdivision, a card is incomplete if part of the matter that an issuer requires to appear on the card before it can be used, other than the signature of the cardholder, has not yet been stamped, embossed, imprinted, or written on it.

TEX. PENAL CODE ANN. § 32.31(b)(9). Here, the only element of proof in issue on appeal is that the Visa debit card number 4076 1111 2222 3333 and the MasterCard debit card number 5249 0500 0176 8097 were each incomplete.

The two cards described by the indictment were admitted into evidence as part of State's Exhibit 7:

The evidence demonstrated that the Visa card bore the name Troy Nelson and the MasterCard card was not issued to any named individual, but instead bore the words "My Card." Each of the two cards had a sixteen-digit number, issuer contact information, and what appeared to be a magnetic strip on the rear. The Visa card had what appears to be a garbled or damaged expiration date, a bend or crease in

the card itself, and an extra or errant character immediately above the beginning of its sixteen-digit number. The Master-Card's expiration date was cleanly printed. There was no testimony that the magnetic strip on the back of either card lacked the necessary encoding for the card to be usable. There was no testimony about what elements a card must have for it to be complete or usable as a debit card and, in fact, none regarding the lack of any essential element needed to allow either card to be used. Finally, the State's primary witness, Trooper McKinney, testified, on cross-examination, that the cards appeared to be complete.

On the other hand, the two cards were in evidence for examination by the jury itself and were accompanied by a remarkable cache of other items strongly suggesting some sort of criminal intent. Because of that, because the jury could physically view and handle each of the two cards, because the Visa apparently lacked a clear expiration date, and because the Master-Card lacked any individual's name to whom it was issued, we conclude that the jury could have rationally found beyond a reasonable doubt that the two cards were lacking something needed to allow their use and that, thus, the evidence was legally sufficient that the two cards were incomplete within the meaning of the statute and the indictment.

We overrule this point of error.

*(2) Omitting the Statutory Definition of "Incomplete" Was Egregiously Harmful*

■ Jury instructions must include "statutory definitions that affect the meaning of the elements of the offense." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011). A statutory definition is to be given insofar as the definition is relevant to the elements of the offense at issue. *Id.*; *Burnett v. State*, 488 S.W.3d

913, 923 (Tex. App.—Eastland 2016, pet. granted).

Omoruyi argues that the lack of the definition of "incomplete" in the jury charge was an error that caused him egregious harm. The State asserts that the lack of the statutory definition in the jury charge was not error, since the incompleteness of the cards was a defensive issue forfeited by Omoruyi's failure to request the definition in the jury charge. The State argues in the alternative that, if incompleteness was not a defensive issue, the error in not submitting the definition did not cause egregious harm.

■ As its authority that the completeness issue was a defensive issue, the State cites a single case. *See Posey v. State*, 966 S.W.2d 57 (Tex. Crim. App. 1998). In *Posey*, the defendant claimed mistake of fact in defending against a charge of unauthorized use of a motor vehicle, asserting that he thought he had the permission of the car's owner to use the car. *See* TEX. PENAL CODE ANN. § 8.02 (West 2011) (mistake of fact); *see also* TEX. PENAL CODE ANN. §§ 2.03–.04 (West 2011) (defense, affirmative defense). Although Posey pursued the issue when examining witnesses, he never requested that the issue be presented to the jury. The Texas Court of Criminal Appeals held that there was no error, because Posey had not requested that the defensive issue be presented to the jury. *Posey*, 966 S.W.2d at 62. Here, the State does not explain how it contends that Omoruyi's claim that the cards were complete is a defensive issue subject to forfeiture. Instead, the State was obliged to prove, beyond a reasonable doubt, that the two cards were incomplete. The statutory definition of "incomplete" bears on an essential element of the offense; it is not an avoidance defense to be asserted or lost by the defendant. Because the statutory definition was not given, there was error.

When jury-charge error is not preserved for appeal, we are to review the error for egregious harm. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Mathonican v. State*, 194 S.W.3d 59, 62 (Tex. App.—Texarkana 2006, no pet.). An error causes egregious harm when it denies the defendant of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. In other words, egregious harm is caused by an error that "affects 'the very basis of the case,' deprives the defendant of a 'valuable right,' or 'vitally affect[s] a defensive theory.'" *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza*, 686 S.W.2d at 172).

We assess the degree of harm in light of the jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Arline*, 721 S.W.2d at 351–52; *see Green v. Texas*, 476 S.W.3d 440, 446 (Tex. Crim. App. 2015), *cert. denied*, — U.S. —, 136 S.Ct. 2454, 195 L.Ed.2d 266 (2016).

### a. The Jury Charge

The charge in this case addressed party responsibility, as the State sought to make Omoruyi responsible not only as a primary actor, but also as a party with Braghini. The charge also addressed the requirement that accomplice testimony, that is, the testimony of Braghini, must be corroborated. The charge defined "cardholder," "debit card," "unmanned teller machine," "customer convenience terminal," "possession," and "effective consent."

It did not define "incomplete," the only element argued by Omoruyi that appeared to be in real doubt.

### b. The Evidence

Based on the evidence adduced at trial, there was little or no controversy concerning any of the issues that were defined in the charge. The central fact issue was whether the cards were complete, the one definition that was missing.

The two debit cards described in the indictment were admitted into evidence as part of State's Exhibit 7, the contents of an envelope, which also included a number of cards that were really blank.

The State's main witness, Trooper McKinney, testified on direct examination to details observable about each of the two cards described in the indictment. The State added questions about the sandpaper McKinney found in the car and the apparent intent of the car's occupants to remove the embossing and re-stamp the cards so they could be used fraudulently.

Omoruyi began by questioning McKinney mostly about the scope of the investigation and the lack of fingerprint evidence, not about the cards being complete or incomplete. The cross-examination did establish that McKinney did not know whether the cards were valid.

On re-direct, the State asked McKinney about aspects of the two cards that might make them invalid. It then established with McKinney that the focus of the case was, not on the presence of an embossing machine, a card loader, or sandpaper, but on whether Omoruyi "had those cards that were incomplete."

On re-cross, Omoruyi identified the two cards described in the indictment and established that they have a telephone number of the issuer on them, but that McKinney did not call the issuer to determine whether the cards were valid. He also got McKinney to testify that the cards had a number of elements in place so that they appeared complete. So, the State's first

and main witness admitted that the two cards were complete, not incomplete. The thrust of that testimony is that the cards were possibly fraudulent or suffered some other defect, not that they were incomplete.

There was much evidence and time spent reviewing 103 jailhouse telephone calls that showed the defense in a bad light, but did not bear on the issues at hand. A long video recording of the stop on the roadside was admitted into evidence and played for the jury, also of little relevance to the elements of the offense.

In light of the evidence, the only real fact issue in play was whether the two cards described in the indictment were complete or incomplete.

### c. The Arguments of Counsel

The State's primary closing argument covered elements of the crime. Some significant focus was put on possession, party liability, and accomplice status and corroboration. While the State mentioned incompleteness as an element of the offense, there was no argument focused on the state of completion of these two cards. Actually, the State's argument referenced the two "offense" cards only in referencing the indictment.

Omoruyi's argument included examination of the burden of proof and raised questions regarding the investigation. Although it spent time on the jailhouse calls, for example, a significant segment of Omoruyi's closing argument was spent on the complete/incomplete status of the two cards, asserting that neither of the two cards was incomplete. Excerpts from Omoruyi's closing argument are as follows:

The Trooper, when I asked him which cards were in violation of the law, picked up two. One of them was right and the other one wasn't. These (indicating) are the cards by the way in State's Exhibit Number 7. Neither of these cards is incomplete, neither. You can ask for them. It's the VISA card ending in 5950, and VISA debit card ending in 3333. Let me just make sure of that—yeah. Well, the two cards alleged are not incomplete. The indictment says that he was charged because he had incomplete cards. They are not incomplete. One of them is a gift card. One of them is a credit card. Both of them have all of the numbers on them. And the gift card tells you how to call in if you want to reload it. Both cards have phone numbers on them. Both of them have identification numbers on them. Both of them have expiration dates. And both of them have who issued the card. Yeah—one of them is a MasterCard, I'm sorry, it was this (indicating) one. But they are still the same, complete. Now, the State's indictment says that the reason that he violated the law was because these (indicating) cards were incomplete. And that therefore, he had to have the intent to complete the cards to commit a crime.

. . . .

So, both of these (indicating) cards are complete, not incomplete which you have to find beyond a reasonable doubt. And both of these cards it's alleged were issued to the issuer. And how can a defendant have the intent to complete a card that is already complete; you can't.

. . . .

They picked their own poison. And their poison was to allege that there were two incomplete cards which is not true.

. . . .

Well, . . . he's not indicted for anything but those two cards, both of which are complete and neither of which was issued to either MasterCard or VISA.

The State's rebuttal argument indicated that the State was then, at least partially, drawn into the completeness battle,

prompting it to explain to the jury its apparent theory that the incompleteness of the two cards in question lay in the lack of encoding in the magnetic stripes on the reverse of the cards: "But if this (indicating) was activated, if this (indicating) had been loaded, and they had the ability to do that, then it would have been complete." The problem with that argument was that there was no proof that the cards in question had not been activated or loaded. The State's rebuttal argument also offered the jury other things to consider on the completeness issue:

Now, whether it's the incomplete cards we've talked about, you've seen them. You can tell they're not completed because they are not actual cards. I don't know if they—I mean they are actual cards, but they haven't—they aren't valid cards as you can tell by the way that they are printed. It looks like maybe they did some test runs, trying to figure out how to do this. You can see the cards themselves appeared to have been scratched in some way. Once you get it in the light, you can tell. There are several of them that have the scratch marks on them like that (indicating). And they have the ability to do that too because they have the sandpaper. Now, the last thing is whether or not they had the consent of VISA and MasterCard to have these (indicating) cards which are not complete, which are not valid. And on the face, you can tell they are not valid cards, and whether they had the consent.

The arguments, taken together, suggest strongly to us that giving the jury the statutory definition of completeness was central to the case.

### d. Other Relevant Information

After closing arguments, during which Omoruyi invited the jury to ask for the cards and the State invited the jury to look at them for scratch marks, the jury sent the trial court a note asking to look at the cards. The court's comments on the record put it in context:

We have received a note that says, "We would like to look at the cards." Our response will be, "The cards are being delivered to you by the bailiff." . . . . The jury did not specify which card or cards, and the entire State's Exhibit 7 was delivered, including the envelope and its contents, which included both "offense" cards and the others in that envelope.

It appears that the jury was likely focused on the completeness issue. Another possibility is that it was focused on evidence that the cards had been, or were being, tampered with. This demonstrates to us that, either way, the statutory definition was crucial to guide the jury on the completeness issue or to properly refocus it on the completion issue, not a red herring issue about tampering with complete cards.

It is also worth noting that Omoruyi filed and argued a motion for new trial. Its focus was on Omoruyi's contention that the two cards were not incomplete and that the definition of "incomplete" was not in the jury charge as required, causing egregious harm.

Assessing the above factors leads us to the conclusion that the lack of the statutory definition of "incomplete" left it without the guidance essential to allow it to decide the only real issue in the case. Because the lack of that definition deprived Omoruyi of the right to have an informed jury decide his fate on the only real defensive theory, it denied him a fair and impartial trial. *See Olivas*, 202 S.W.3d at 144; *Almanza*, 686 S.W.2d at 171. Harm was egregious.

We reverse the judgment of the trial court and remand this matter to the trial court for a new trial.

Dissenting Opinion by Justice Moseley

Bailey C. Moseley, Justice

Omoruyi asserts two errors in his appeal, both centering around the statutory definition of an incomplete card contained in the statute criminalizing possession of two or more incomplete credit cards or debit cards. *See* TEX. PENAL CODE ANN. § 32.31(b)(9) (West 2016). In his first point of error, Omoruyi asserts that the State failed to prove beyond a reasonable doubt that the two debit cards he had in his possession were incomplete under the statutory definition. His second point of error complains of the trial court's omission of the statutory definition of an incomplete card in the jury charge. The majority opinion virtually ignores the statutory definition in finding sufficient evidence to support Omoruyi's conviction, yet finds that the omission of the statutory definition in the jury charge was egregiously harmful because "the lack of the statutory definition of 'incomplete' left [the jury] without the guidance essential to allow it to decide the only real issue in the case." While I agree that the omission of the statutory definition was egregiously harmful, in this case, the State offered no evidence to show the cards were incomplete under the statutory definition. Consequently, Omoruyi is entitled to the greater remedy of acquittal, rather than a new trial afforded by jury charge error. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000), *overruled in part on other grounds by Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001). Therefore, I respectfully dissent.

Due process requires that the State prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). The majority correctly states that we determine whether the evidence is legally sufficient by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* However, "[t]his list is 'not necessarily exhaustive.'" *Clinton v. State*, 354 S.W.3d 795, 799 (Tex. Crim. App. 2011) (quoting *Curry*, 30 S.W.3d at 404). "The law as authorized by the indictment consists of 'the statutory elements of the offense ... as modified by the charging instrument.'" *Id.* (quoting *Curry*, 30 S.W.3d at 404).

When an element of the offense is defined by statute, the statutory definition becomes part of the hypothetically correct jury charge, or stated another way, becomes part of the State's burden of proof. *See Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017). In *Johnson*, the Court of Criminal Appeals examined the sufficiency of the evidence supporting Johnson's conviction for aggravated robbery. The only element at issue was whether Johnson "use[d] or exhibit[ed] a deadly weapon." *Id.* (quoting TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011)). The court explained:

> To meet its burden, the State was required to prove that the knife [Johnson] had was a deadly weapon as defined by statute and that, if it was, he also used or exhibited the knife while committing robbery. A deadly weapon is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended

use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17); *McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(46). *Because not all knives are manifestly designed, made, or adapted for the purpose of inflicting serious bodily injury or death, the evidence is sufficient to support the finding in this case only if the jury could have rationally found that [Johnson] used the knife in such a way, or intended to use the knife in such a way, that it was capable of causing serious bodily injury or death. Id. § 1.07(a)(17).*

*Id.* (emphasis added) (citation omitted). Thus, because the Penal Code specifically defined deadly weapon, the definition was part of the State's burden of proof.

In this case, the indictment alleged that Omoruyi committed credit/debit card abuse by possessing

> two incomplete debit cards, namely, a Visa number 4076 1111 2222 3333 debit card and a MasterCard number 5249 0500 0176 8097 debit card, which cards had been issued to [sic] Visa and MasterCard, respectively, and the defendant possessed each of the cards without the card having been issued to him and with intent to complete them, and without the effective consent of each issuer of each of the cards.

The statute under which Omoruyi was indicted provides that "a card is incomplete if part of the matter that an issuer requires to appear on the card before it can be used, other than the signature of the cardholder, has not yet been stamped, embossed, imprinted, or written on it." Tex. Penal Code Ann. § 32.31(b)(9).

Omoruyi only challenges the sufficiency of the evidence showing that the two debit cards charged in the indictment were incomplete. To meet its burden that the cards were incomplete, under its indictment the State was required to show beyond a reasonable doubt that part of the matter that an issuer requires to be on both[1] the Visa debit card "number 4076" (the Visa card), and on the MasterCard debit card "number 5249" (the MasterCard card), before each can be used, has not been stamped, embossed, imprinted, or written on them.

As the majority opinion sets forth, both the Visa card and the MasterCard card contain magnetic strips and all of the information stamped, embossed, or imprinted on them that is normally seen on a debit card, with the possible exceptions that the MasterCard card was stamped "My Card," and the Visa card's expiration date was illegible. As the majority candidly notes, there was no testimony, whether from an issuer,[2] or any other witness, regarding what is required to be stamped, embossed, or imprinted on either card by an issuer before it can be used. Neither was there any testimony that either card was lacking any information necessary for its use.

Nevertheless, the State argues, and the majority agrees, that a rational jury could find that the cards were incomplete be-

---

1. Section 32.31(b)(9) requires that the defendant must possess two or more incomplete credit cards or debit cards. Tex. Penal Code Ann. § 32.31(b)(9). Since the State pled that Omoruyi possessed two specific cards, it was required to prove both of these cards were incomplete.

2. The back of both cards state that the cards were issued by Green Dot Bank.

cause they were not issued to Omoruyi, and that a card embosser, a card reader, two laptops, sandpaper, a sock, and several other blank credit cards or partial credit cards were found with the Visa card and the MasterCard card. In the words of the majority, the other items were "a remarkable cache of other items strongly suggesting some sort of criminal intent." However, the fact that the cards were not issued to Omoruyi is another element of the offense that the State had the burden to prove,[3] but that element provides no evidence that the cards were incomplete under the statutory definition. Further, while the other items found with the two subject cards may suggest that Omoruyi was intending to complete some cards, or to commit some other crime, they do not in any way provide any factual basis from which a rational jury could reasonably infer that the two subject cards had matters missing that were required by an issuer to be stamped, embossed or imprinted on the cards. Due process required the State to prove that the Visa card and the MasterCard card were incomplete as charged in the indictment, not that he was intending to commit some other crime.

Neither does the fact that the MasterCard card lacked an individual's name to whom it was issued raise an inference that the card was incomplete under the statutory definition. As the majority notes, a "debit card" is a "card . . . or any other device authorizing a designated person or bearer to . . . obtain property or services by debit to an account at a financial institution." TEX. PENAL CODE ANN. § 32.31(a)(4) (West 2016). "Bearer" is not defined in the Penal Code, so we interpret it in accord with its ordinary meaning. *Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014). The meaning of "bearer" is "one holding a check, draft, bond, or other order for payment esp. if marked payable to bearer." *Bearer*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006). Although the definition shows that an instrument marked "payable to bearer" definitively makes the person holding the instrument a bearer, it by no means limits the definition of a bearer to this one instance.[4] The MasterCard card had "My Card" stamped in the place where an individual's name typically appears. The majority holds that the jury could have found that the MasterCard card was incomplete since there was no indication that a card issued with the name "My Card" could be used by anyone bearing the card. However, it was the State's burden of proof to show that an issuer would require either an individual's name or some legend other than "My Card" to enable the bearer to use the card. The State offered no such proof. It may be that an issuer would require some other legend, or it may be that "My Card" is sufficient for the bearer to use the card. Without some evidence of what an issuer requires, however, either conclusion is based on speculation, not rational inference.

Finally, the State urges us to broaden the statutory definition of "incomplete card" to preserve the intent of the Legislature. The State argues the Legislative intent was to allow a conviction for credit card or debit card abuse as long as a trier

---

**3.** Section 32.31(b)(9) provides that a person commits the offense of credit card or debit card abuse if "he possesses two or more incomplete credit cards or debit cards that have not been issued to him with intent to complete them without the consent of the issuer." TEX. PENAL CODE ANN. § 32.31(b)(9).

**4.** Both the Visa card and the MasterCard card appear to be pre-paid, reloadable debit cards. Noted on the back of both cards is the following: "After successfully registering your card, check your balance, find reload location or set up direct deposit at greendot.com."

of fact found he possessed two or more incomplete cards not issued to him with the intent to complete them. When we interpret a statute to determine legislative intent, "we look first to the language of the statute[,]" and "[w]hen the meaning is plain, we look no further." *McClintock v. State*, No. PD-1641-15, —— S.W.3d ——, ——, 2017 WL 1076289, at *3 (Tex. Crim. App. Mar. 22, 2017) (quoting *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996)). In Section 32.31(b)(9) of the Penal Code, the meaning is plain: an incomplete card is one that part of the items *required by an issuer* to appear on the card before it can be used has yet to be stamped, embossed, imprinted, or written on it. TEX. PENAL CODE ANN. § 32.31(b)(9).

No doubt the Legislature intended to allow such a prosecution and conviction. However, the Legislature also provided a specific definition of incomplete card and thereby set forth exactly what proof was necessary to show that the card was incomplete. In *Johnson*, the jury would not be allowed decide that the knife was a deadly weapon based on its own conjecture. Rather, since the Legislature defined "deadly weapon" in the Penal Code, the State could only obtain a conviction by showing that the knife used in the robbery was used in a manner, or was intended to be used in a manner, that was capable of causing serious bodily injury or death. *See Johnson*, 509 S.W.3d at 322. Similarly, in this case, the jury may not decide the subject cards are incomplete based on what it thinks a card must contain. Rather, to obtain a conviction under the statute, the State was required to prove what an issuer requires to be stamped, embossed, or imprinted on the card before it can be used. Since it failed to do so, the State failed to show that both the Visa card and the MasterCard card were incomplete.

For these reasons, I would find that there is insufficient evidence to support Omoruyi's conviction and sustain his first point of error. Consequently, I would reverse the trial court's judgment and render judgment acquitting Omoruyi.