

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1722-10

**MARIE LOUISE OUELLETTE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS,
### WILLIAMSON COUNTY

Womack, J., delivered the opinion of the Court, in which Keller, P.J., and Price, Cochran, and Alcala , JJ., joined. Keasler, J., concurred in the judgment of the Court. Meyers, J., filed a dissenting opinion. Johnson, J., dissented. Hervey, J., did not participate in the consideration or decision of the case.

The appellant rear-ended another car while driving in Austin. She was charged by information with driving while intoxicated "by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body." The court's charge repeated that language. The jury convicted her. The Third Court of

Appeals affirmed the conviction.[1]

We granted review of the issue, "In a driving while intoxicated case, where the evidence is legally sufficient to support a conviction on the theory that the defendant was intoxicated by … alcohol …, is it proper for the trial court, in its charge, to also authorize a conviction on an alternative theory that the defendant was intoxicated by … a drug, or a combination of alcohol and a drug …, where the evidence merely shows that medications prescribed for the defendant were found in her car …?" Because we find there was evidence relating to the challenged portions of the definition, we conclude the charge was proper and affirm the Court of Appeals.

The jury heard the first police officer to arrive at the scene of the collision testify that the appellant was acting unusual and that he smelled alcohol on her breath. Because he thought the appellant could be intoxicated, he summoned a member of the Austin Police Department's DWI task force, Officer Mabe. The appellant told Mabe that she had drunk a glass of wine earlier in the evening. Mabe then administered two field sobriety tests. Based on the results of these tests, physical symptoms of intoxication, and the odor of alcohol on her breath, Mabe placed her under arrest for driving while intoxicated. After the arrest, an officer found in the car a pill bottle containing three types of pills. The officer who found the pills did not remember where in the car he found them.

Officer Mabe said that when he confronted the appellant with the pills she identified two types of pills as Soma and Darvocet, but was unable to identify the third type. She said the pills were prescribed to her but that she had not taken any of them in over a month. She offered to

---

[1] *Ouellette v. State*, No. 03-08-00566-CR, 2010 WL 3377774, 2010 Tex. App. LEXIS 7053 (Tex. App.–Austin, August 27, 2010) (not designated for publication).

submit to a blood test to prove this claim, but retracted her offer when Mabe said that a blood test would also check for alcohol content. Mabe testified that Soma was a central nervous system depressant capable of causing the horizontal-gaze nystagmus he observed during the field sobriety tests. In its jury arguments, the State emphasized that the jury could find that the appellant was intoxicated either by pills or alcohol or both.

In the Court of Appeals, the appellant argued that the trial court erred in giving the jury a definition of "intoxicated" that included being intoxicated from drugs, because there was no evidence that the appellant was intoxicated from anything other than alcohol. The Court of Appeals concluded that, presuming the State was required to prove the type of intoxicant, there was evidence that the appellant was intoxicated by drugs.[2]

Our DWI statute provides a definition of "intoxicated" that focuses on the state of intoxication, not on the intoxicant.[3] Trial courts are obliged to instruct juries on "the law applicable to the case," which includes the statutory definitions that affect the meaning of the elements of the offense.[4]

We have previously held that when only a portion of the statutory definition is relevant to the elements of the offense, giving the whole statutory definition may be error. The defendant in *Alvarado v. State* was charged with causing injury to a child by putting him in a tub of hot water.[5]

---

[2] *Ouellette*, 2010 WL 3377774, at *3.

[3] TEX. PEN. CODE § 49.01(2)(A) (one may become legally intoxicated through the ingestion of "any … substance into the body"); *see Gray v. State*, 152 S.W.3d 125, 136 (Tex. Cr. App. 2004) (Cochran, J., dissenting) ("The law does not differentiate between the drunk driver who was intoxicated because he consumed alcohol, or injected heroin, or sniffed glue, or took prescription medicine.")

[4] *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Cr. App. 2009).

[5] 704 S.W.2d 36, 37, 39 (Tex. Cr. App. 1985).

Her defense was that she did not know the water was hot. The statute then in effect required the State to prove that the defendant "intentionally, knowingly, recklessly or with criminal negligence engage[d] in conduct that cause[d] serious bodily injury … to a child …." We held that this statute was a "result of conduct" offense, in which the culpable mental state had to apply to the result of the conduct, not merely the conduct itself (*i.e.* proof that she intentionally, knowingly, recklessly, or with criminal negligence placed a child in water would be insufficient to convict; the State had to prove that she intentionally, knowingly, recklessly, or with criminal negligence caused injury to a child by placing him in hot water.[6] Because the complete statutory definitions of the culpable mental states in Penal Code § 6.03 apply to *either* the "nature" of the conduct (*e.g.,* placing a child in water) *or* the "result" of the conduct (*e.g.,* injuring a child by placing it in hot water), the trial court should have given the jury only the portion of the definition dealing with the result of conduct.[7]

The appellant here wants us to make a similar holding as it relates to the facts of this case, namely that a trial court errs in submitting to a jury sections of a statutory definition that are not relevant to the evidence in the case. We need not decide that issue today; while evidence that the appellant was intoxicated by drugs was circumstantial and not obviously overwhelming, it is nonetheless present in the record.

Officer Mabe testified that the appellant showed signs of having consumed a central-nervous-system depressant. He said that both alcohol and Soma are central nervous system depressants. Mabe said that when he arrested the appellant, which was before the pills were

---

[6] *Id.*, at 36.

[7] *Id.*, at 37.

found, he did so because he believed she was intoxicated by alcohol. He never said whether the discovery of the pills altered his opinion about how the appellant was intoxicated.

In short, the appellant appeared intoxicated, police found in her vehicle a drug that could have produced the observed symptoms of intoxication, and she refused a blood test. Although there was no direct evidence that the defendant consumed the drug, there was evidence from which a rational juror could have found that the defendant did so.

The jury charge in this case reflected the law as it applied to the evidence produced at trial. We affirm the judgments of the courts below.

Delivered October 12, 2011.
Publish.