Hervey, J., delivered the opinion of the Court in which Keasler, Alcala, Richardson, Newell, and Walker, JJ., joined.
Burt Lee Burnett was charged with driving while intoxicated after he rear-ended another vehicle. The State alleged that Burnett was intoxicated "by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, and any other substance into his body...." The jury charge included that language in the abstract and application portions of the charge. Burnett objected to including the entire "loss of faculties" statutory definition in either portion of the charge because the evidence showed that, if he was intoxicated, it was only due to alcohol, not anything else. His objection was overruled, and the jury convicted him.[1] He was fined $1,000 and sentenced to 120 days' confinement in the county jail, which was probated for eighteen months.
On appeal, he made the same argument: the jury should have been instructed that "intoxication" only means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol...."[2] The court of appeals agreed, holding that it was error to submit the entire definition because no rational jury could conclude that Burnett consumed intoxicating drugs based on the evidence. In reaching its conclusion, the court of appeals distinguished our decision in Ouellette v. State , 353 S.W.3d 868 (Tex. Crim. App. 2011). We granted the State's petition for discretionary review to decide whether the lower court erred when it distinguished Ouellette from the facts of this case. Because we agree with the analysis of the court of appeals, we will affirm its judgment.
BACKGROUND
Burnett rear-ended a vehicle occupied by Michael Bussey and Nathan Chappa. After the wreck, Bussey saw Burnett get out of his car and "kind of stagger" to his *79 vehicle. When Burnett got there to ask if everyone was okay, Bussey rolled down his window, and he and Chappa caught a "whiff" of alcohol. Chappa said Burnett had glassy and bloodshot eyes, but Bussey only noticed that Burnett was slurring his words.[3] They both thought that Burnett was intoxicated.
Officer Clinton Coapland was the first to arrive on scene. When he made contact with Burnett, Burnett's speech was slurred. He also had to ask Burnett the same questions multiple times. When Coapland leaned towards Burnett to hear him better, Coapland smelled the faint odor of alcohol, but he did not see that Burnett's eyes were glassy or bloodshot. Coapland radioed for backup. Once Officer William Allred arrived, he began to secure the scene while Coapland began his DWI investigation. Coapland asked Burnett if he had been drinking and whether he would consent to taking standard field sobriety tests (SFSTs). Burnett said that he had not been drinking and consented to take the tests. He showed signs of intoxication during the horizontal-gaze nystagmus test (HGN test), the walk-and-turn test, and the one-leg-stand test.[4] Coapland concluded that Burnett was intoxicated and arrested him. Incident to the arrest, Coapland searched Burnett and found twenty white pills and one blue pill in his jacket. Meanwhile, Allred performed an inventory search of Burnett's car and found pills, a laptop, and a Ruger in a bag in the front-seat of the car. He also found a prescription pill bottle in the car. The bottle was not photographed or admitted into evidence. According to Coapland, Allred told him that the bottle was for the medication found in Burnett's coat pocket and that the pills may be hydrocodone. Allred, however, contradicted Coapland, testifying that he did not remember if the prescription pill bottle was for the pills they found.
The State charged Burnett with Class B misdemeanor DWI and alleged that he was intoxicated "by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of the substances, and any other substance into his body...."
Motion to Suppress
Burnett filed a motion to suppress, arguing that the officers should not be permitted to testify as to what type of pills they found because they were not drug recognition experts (DREs). The trial court agreed and ruled that the officers were not allowed to testify that they thought the pills were hydrocodone. The next day, however, the issue of the pills came up again. During this discussion, the State told Burnett and the court that there was video footage from the scene during which Coapland, Allred, and Burnett spoke about the pills. The video showed that, after Coapland found the pills in Burnett's jacket, he gave them to Allred, who said that the pills looked like hydrocodone. Allred asked Burnett whether he had a prescription for the medication, and Burnett responded that he did. The State argued that the evidence of Burnett's pill possession should be admitted into evidence as same-transaction contextual evidence.[5] Burnett *80 again objected that the officers were not DREs and so were not qualified to testify about what kind of pills they found or any potential intoxicating effects. He also made other objections that are not relevant here. The trial court ruled that the pill evidence was admissible as same-transaction contextual evidence.[6]
COURT OF APPEALS
Burnett raised two issues in the court of appeals. In his first point of error, he argued that the trial court erroneously admitted evidence that Burnett was in possession of hydrocodone. Burnett v. State , 488 S.W.3d 913, 916 (Tex. App.-Eastland 2016). In his second point of error, he asserted that the trial court erroneously instructed the jury that it could convict him if it found that he was intoxicated by reason of the introduction of anything other than alcohol into his system. Id. In addressing his second issue, the court of appeals explained that it is insufficient for a charge to incorporate only the allegations in the charging instrument; "it must also apply the law to the facts adduced at trial." Id. at 923 (citing TEX. CODE CRIM. PROC. art. 36.14 ) (quoting Gray v. State , 152 S.W.3d 125, 127 (Tex. Crim. App. 2004) ). It next turned to our decision in Ouellette , in which we suggested that it could be error to submit the full "loss of faculties" definition of intoxication if the evidence shows only alcohol intoxication. Id. at 923. According to the court, Ouellette is distinguishable from the facts of this case because, in this case a rational juror could not have reasonably inferred that Burnett ingested drugs, unlike in Ouellette where the evidence permitted such an inference. Id.
OUELLETTE
Similar to the facts of this case, Ouellette rear-ended another car and was charged with DWI "by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances[.]"[7] Ouellette , 353 S.W.3d at 868-69. The responding officer testified that Ouellette "was acting unusual and that he smelled alcohol on her breath." Id. at 869. He thought that Ouellette could be intoxicated and asked for a member of the Austin Police Department's DWI task force to start an investigation. Id. Officer Mabe responded. Ouellette told Mabe that she drank one glass of wine earlier that evening, and she agreed to perform some SFSTs. Mabe administered two tests, and Oullette showed signs of intoxication, so Mabe arrested her for DWI "[b]ased on the results of the [ ] tests, physical symptoms of intoxication, and the odor of alcohol on her breath[.]" Id. After the arrest, *81 police found three different types of pills in Ouellette's car.
When Mabe confronted Ouellette about the pills, Ouellette said that she recognized two of them as Soma and Darvocet, but that she did not know what the third one was. Id. at 869. According to her, she had a prescription for all of the medications and had not taken any of them in over a month. Id. To backup her story, she offered to provide a blood sample, but she later withdrew that offer after Mabe told her that the sample would also be checked for its alcohol concentration. Id. Mabe testified that both alcohol and Soma are central nervous-system depressants (CNS depressants) that can cause the horizontal-gaze nystagmus like the one he observed while administering the HGN field-sobriety test. Id. During closing arguments, the State told the jury that it could find that Ouellette was intoxicated from drinking alcohol, from the Soma found in her car, or from a combination of both alcohol and the prescription medication. Id. The jury convicted Ouellette.
Ouellette appealed her case to the Austin Court of Appeals, arguing that the evidence showed that, if she was intoxicated, it was due to only alcohol. Id. The court of appeals rejected her claim, however, concluding that a jury could have found that her intoxication was caused by the Soma found in her car. Id.
After losing in the court of appeals, Ouellette filed a petition for discretionary review in this Court. We granted it to decide whether it was proper for the charge to authorize Ouellette's conviction under the theory that she was intoxicated by a drug or a combination of alcohol and a drug, although the only evidence of drug intoxication was the prescription medications found in her car. Id. In our analysis, we first noted that the DWI statute focuses on whether a person is intoxicated while operating a motor vehicle in a public place, not the specific substance that caused a person to become intoxicated. Id. at 869. We further explained that trial courts are required to instruct juries regarding "law applicable to the case," which includes the elements of the offense and any statutory definitions that affect the meaning of those elements.[8] Id. at 870. We have previously suggested that giving an entire statutory definition may be error when only a portion of a statutory definition is relevant to the elements of the offense; however, we did not have to reach that issue in that case because, even though the drug-intoxication evidence was circumstantial "and not obviously overwhelming," it was nonetheless sufficient to support the jury instruction. Id.
The circumstantial evidence indicated that Ouellette showed signs of having ingested a CNS depressant and that alcohol and Soma are both CNS depressants. We affirmed the judgment of the court of appeals, summarizing that,
*82 In short, [Ouellette] appeared intoxicated, police found in her vehicle a drug that could have produced the observed symptoms of intoxication, and she refused a blood test. Although there was no direct evidence that [Ouellette] consumed the drug, there was evidence from which a rational juror could have found that the defendant did so.
The jury charge in this case reflected the law as it applied to the evidence produced at trial.
Id.
ARGUMENTS
The State argues that a jury charge should include the entire "loss of faculties" definition, irrespective of the trial evidence. According to it, the substance that caused a person to become intoxicated is purely an evidentiary issue because the focus is on only whether the defendant was intoxicated, not the intoxicant. For support, the State relies on Judge Cochran's dissenting opinion in Gray v. State , 152 S.W.3d 125, 136 (Tex. Crim. App. 2004) (Cochran, J., dissenting).[9] It also contends that, by not instructing the juries on the entire "loss of faculties" definition, courts are contravening the purpose of the expansive definition adopted by the legislature. By way of hypothetical, it warns that,
If a criminal defendant were to demonstrate clear evidence of extreme intoxication yet provides a breath sample showing a blood alcohol level considerably below .08, the defendant's own behavior is indicative that some other substance contributed to his intoxication even if the exact nature of the intoxicant is not known or cannot be determined. Under the Eastland Court's rationale, the jury charge in this defendant's case would only be allowed to give an instruction *83 on alcohol; the possibility that the defendant may be intoxicated on "any other substance" may not even be considered.
State's Brief on the Merits at 21.
Burnett responds that, while the State in its charging instrument need only allege that the defendant was "intoxicated" and is permitted to track the language of the entire statutory definition, it is error to give to the jury portions of a statutory definition that are not supported by the evidence. He argues that the rule urged by the State would invite the exact type of speculation that we condemned in Hooper v. State , 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007), and that such guessing could ensnare thousands of innocent Texans, such as fatigued drivers and those with naturally bad balance, even though they never ingested any substance as required to prove intoxication. He also contends that the State misreads Judge Cochran's dissent in Gray , and that she was "lament[ing] the Court's holding in Garcia which required the State to plead the specific intoxicant, and then allowed a defendant to claim the State proved the incorrect intoxicant...." Appellant's Amended Brief on the Merits at 23 (citing Gray , 152 S.W.3d at 136 ). He also points out that, in Gray , the majority concluded that, although the State specifically pled alcohol intoxication and presented proof that Gray was intoxicated by alcohol, the synergistic-effect instruction given in that case was not erroneous because there was also evidence that Gray took anti-depressants and that those anti-depressants made him more susceptible to becoming intoxicated by alcohol.[10] Here, however, Burnett contends that there is no evidence that he was intoxicated by prescription medication.
ANALYSIS
We agree with Burnett that the State's reliance on Judge Cochran's dissent is misplaced. Our reading of Judge Cochran's opinion shows that she was in fact discussing the State's pleading burden, not instructions in a jury charge. This is evident from the passage directly following the excerpt provided by the State,
This case is a prime example of the Dickensian hair-splitting that we have allowed ourselves to fall into. Appellant makes no claim that he was not intoxicated at the time he rear-ended a fellow driver. He admits that he was a physically and mentally impaired driver. His contention is simply that he was not intoxicated because of the alcohol he drank; instead, he was intoxicated because of the anti-depressants he was taking. This is a "defense" that is condoned, if not encouraged, by our decision in Garcia which requires the State to allege the precise substance that it thinks caused an impaired driver's intoxication, and then permits that driver to defend against the charge by claiming that he was intoxicated on some other substance.
Gray , 152 S.W.3d at 136 (Cochran, J., dissenting).
We also decline the State's invitation to hold that the entire statutory *84 definition of "intoxicated" should be included in every DWI jury charge regardless of the evidence adduced at trial. The State is correct that the legislature has adopted a broad definition of "intoxicated" that focuses on whether a person is intoxicated and not the agent that caused it. Ouellette , 353 S.W.3d at 869-70. We have explained that the State can use this to its advantage by alleging in its charging instrument that the defendant was simply "intoxicated" or by including the entire statutory definition, instead of pleading the specific intoxicant as was previously required. However, it is the responsibility of the trial court to deliver to the jury a written charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. Part of that duty includes applying the law to the facts of the case. Gray , 152 S.W.3d at 127-28. And, although the trial court is obliged to include in the jury charge statutory definitions that affect the meaning of elements of the crime, Villarreal v. State , 286 S.W.3d 321, 329 (Tex. Crim. App. 2009), the charge must also be tailored to the facts presented at trial.[11] That is, the trial court must submit to the jury only the portions of the statutory definition of "intoxicated" that are supported by the evidence. To do otherwise is error.
The State argues that, under this rationale, the jury was not permitted to consider the possibility that the defendant was intoxicated from "any other substance." We disagree. The jury is permitted to consider whether a defendant was intoxicated from "any other substance" when there is evidence that the defendant ingested a substance that caused him to become intoxicated or there is sufficient evidence for a rational juror to infer such. But, as we will explain, the record here does not support that Burnett ingested a substance other than alcohol.
The evidence here shows that Burnett was intoxicated because he had been drinking alcohol. The witnesses and police could smell it, and Burnett showed signs of intoxication during three SFSTs, which as Coapland testified, is consistent with a person that has lost his mental or physical faculties due to the imbibement of alcohol. Burnett was also observed to have slurred speech and glassy and bloodshot eyes. Police later found hydrocodone pills in Burnett's vehicle, but there is no evidence in this record as to what kind of drug hydrocodone is, whether it can cause intoxicating effects, or whether the symptoms of intoxication Burnett was experiencing were also indicative of intoxication by hydrocodone. These are critical elements that were present in Ouellette but not in this case.
In Ouellette , the arresting officer asked Ouellette about the pills that were found in her vehicle, and she expressly identified two of them. Here, Burnett did not tell the officers that the pills were hydrocodone, although Allred told Coapland that he thought they were hydrocodone. Allred asked Burnett whether he had a prescription for the medication he found,[12] and Burnett responded that he did. Allred did *85 not ask Burnett, however, whether the pills were hydrocodone or whether he had a prescription for hydrocodone ; he simply asked Burnett if he had a prescription for "those." And, Burnett never told the police that the pills were hydrocodone or that he had a prescription for hydrocodone. We agree with the court of appeals that this interaction was insufficient for a jury to rationally infer that the white pills were hydrocodone and that Burnett was claiming to have a prescription specifically for hydrocodone. In Ouellette , the officer testified that Ouellette appeared intoxicated after ingesting a CNS depressant and that alcohol and Soma (one of the medications Ouellette identified), are both CNS depressants. This pivotal testimony provided the link that allowed the jury to infer that Ouellette was intoxicated due either to ingesting alcohol or the Soma found in her car.[13] Ouellette , 353 S.W.3d at 870. That explains why we said in Ouellette , that the jury charge "reflected the law as it applied to the evidence produced at trial." Id.
We agree with the court of appeals that Ouellette is distinguishable from the facts of this case and that, here, the jury charge was erroneous because it did not apply the law to the facts produced at trial.
HARM
The court of appeals held that Burnett was caused some harm by the erroneous jury charge in this case. Burnett , 488 S.W.3d at 925. According to it, Burnett was harmed because the pill-related evidence became an integral part of the trial even though there was insufficient evidence to submit that theory of intoxication to the jury. Id. We do not review its harm analysis, however, because we did not grant review on that issue. Juarez v. State , 308 S.W.3d 398, 406 (Tex. Crim. App. 2010) (judgment of the court of appeals finding harmful error should be affirmed when this Court agrees that the jury charge was erroneous but did not grant review of the lower court's harm analysis).
CONCLUSION
We affirm the judgment of the court of appeals.
Richardson, J., filed a concurring opinion.
Keller, P.J., filed a dissenting opinion in which Yeary and Keel, JJ., joined.
Yeary, J., filed a dissenting opinion in which Keller, P.J., joined.
Richardson, J., filed a concurring opinion.
*86 CONCURRING OPINION
The issue presented to this Court for review is a narrow one-whether the court of appeals misapplied this Court's decision in Ouellette v. State[1] in determining that the inclusion of the full statutory definition of intoxication[2] in the jury charge constituted harmful error. In Ouellette , we held that the jury charge, which included the full definition of "intoxication," was not erroneous because it "reflected the law as it applied to the evidence produced at trial."[3] In this case, the Court holds that the jury charge, which also included the full definition of "intoxication," was erroneous, agreeing with the court of appeals that Ouellette is distinguishable from this case even though the underlying facts are very similar.
In both this case and in Ouellette , the offense charged was driving while intoxicated due to the introduction of "alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of the substances, and any other substance into [the] body." In both cases, evidence was introduced at trial that the appellants had pills in their possession, both appellants admitted to possessing a prescription for medication, and in both cases, the jury charge tracked the charging instrument. However, despite these similarities, Ouellette is inapplicable here. The jury charge in this case erroneously included the full statutory definition of intoxication, and I write separately to explain why.
In Ouellette , this Court held that, "[a]lthough there was no direct evidence that the defendant consumed the drug, there was evidence from which a rational juror could have found that the defendant did so."[4] In Ouellette , there was testimony that the appellant appeared intoxicated after ingesting a central nervous system depressant and that alcohol and the prescription pills found in her possession are both central nervous system depressants, and that is why the jury charge in Ouellette correctly included the full definition of intoxication. Whereas in this case, there was no evidence as to what kind of drug hydrocodone is, whether it can cause intoxicating effects, and whether Appellant was showing signs of intoxication due to the hydrocodone.
More importantly, I point out that, in Ouellette , the appellant did not object to evidence of the pills, she did not object to her own identification of the pills as Soma-a prescription medication, and she did not object to the arresting officer testifying that Soma affects a person's central nervous system. Since this unobjected-to evidence[5] was before the jury, we held in *87 Ouellette that it was not error to include the full definition of intoxication in the jury charge, despite the appellant's assertion that she had not taken any of the pills.
In this case, Appellant denied having had any alcohol, he neither confirmed nor denied having taken any pills, he did not identify the pills as hydrocodone, there was no expert testimony regarding the pills being hydrocodone, and the officer admitted that he was not qualified to testify regarding drug impairment. Therefore, the court of appeals correctly held that evidence of the pills was inadmissible. Even though the evidentiary issue is not before us, I do not believe its impact on the jury charge issue can be separated. Moreover, in this case, unlike in Ouellette , Appellant filed a motion to suppress evidence of the pills, he filed a motion in limine to prevent any reference to the pills, during trial he objected to any evidence of the pills coming in, and he objected to the officer's identification of the pills as hydrocodone. Had his objections been sustained and had evidence related to the pills been excluded, it is clear that the full intoxication charge would have been erroneous.[6] The trial court erred in admitting evidence related to the pills, and such error was both compounded by and created the error in the jury charge.[7] Without the evidentiary error there would have been no jury charge error, and that is what distinguishes this case from Ouellette.
Having found that the trial court erred by including the full statutory definition of intoxication in the jury charge, the court of appeals determined that Appellant suffered "some harm" under Almanza v. State[8] "[b]ecause the pills became an integral part of this case and because the jury was permitted to find Appellant guilty of intoxication based on the introduction of pills into his system."[9] I believe that this interrelated stairstep analysis performed by the court of appeals was necessary to arrive at the proper resolution of this appeal. Therefore, I agree with the Court's *88 decision to affirm the judgment of the Court of Appeals.[10]
With these comments, respectfully, I concur.
Keller, P.J., filed a dissenting opinion in which Yeary and Keel, JJ., joined.
I would hold that the jury instruction regarding intoxication by a controlled substance was proper because the evidence was sufficient to show that appellant was under the influence of hydrocodone, an intoxicating drug. The Court contends that the evidence is insufficient to show that some of the pills possessed by appellant were hydrocodone. I disagree. The video of the stop was played for the jury. Officer Coapland retrieved a bag of pills from Appellant's pocket and asked Appellant, "What's in the bag?" Appellant responded, "I don't know." Officer Coapland then handed the bag of pills to Officer Allred. Officer Allred verbally identified the pills as "hydrocodone."[1] Eleven seconds later, Officer Allred asked Appellant, "Do you have a prescription for that?"[2] Appellant replied, "Yes." This interaction provided sufficient evidence from which a jury could conclude that the pills were hydrocodone. Officer Allred's identification of them as such is some evidence from which a jury could conclude they were hydrocodone, and Appellant's affirmative answer to the question of whether he had a prescription "for that," without disputing the officer's characterization of the pills as hydrocodone, is an implicit admission that they were.
The Court also contends that there is insufficient evidence that hydrocodone is an intoxicating substance. Again, I disagree. "Hydrocodone is the generic name for a common, widely distributed, opioid narcotic analgesic, which is produced in various combinations under brand names such as Lorcet, Lortab, and Vicodin."[3] The Supreme Court of Ohio has recently held, "When the effects of a drug are sufficiently well known-as they are with hydrocodone-expert testimony linking ingestion of the drug with indicia of impairment is unnecessary."[4] It is true that we held in Smithhart v. State that "[u]nlike alcohol intoxication, which is 'of such common occurrence' that its recognition requires no expertise ..., this court is unable to say that such is the case with being under the influence of drugs."[5] But that holding, issued over 43 years ago, is outdated, at least with respect to hydrocodone. I would follow the lead of the Supreme Court of Ohio and hold that a rational jury could conclude that hydrocodone is a drug that is capable of producing intoxication without specific testimony to that effect.
*89 There was also some evidence before the jury that hydrocodone was an intoxicating substance. On cross-examination, defense counsel showed Officer Coapland a document produced by the National Highway Traffic Safety Administration. The following colloquy occurred:
Q. It talks about narcotic-I think it's analgesic?
A. Analgesics.
Q. Analgesics, okay. And if we go down just a little bit, it talks about what one of those is, type, example. Hydrocodone would be one of them?
A. Correct.
Q. All right, and up there, (indicating), it, uh-we're still under analgesics, right?
A. Correct.
Q. It says, (reading), "Eye indicators"-
A. Correct.
Q. -"for somebody intoxicated by an analgesic."
A. Correct.
The status of hydrocodone as an intoxicating substance makes Ouellette[6] controlling in this case; consequently, it was not error to refer to a controlled substance in the jury charge.
I respectfully dissent.
Yeary, J., filed a dissenting opinion in which Keller, P.J., joined.
DISSENTING OPINION
In order to prove the offense of driving while intoxicated (DWI), the State must present evidence to show that "[a] person ... [was] intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a). To prove the person was "intoxicated," the State must establish either that he had a blood alcohol concentration of 0.08 or more, TEX. PENAL CODE § 49.01(2)(B), or that he lacked "the normal use of mental or physical faculties by reason of the introduction of" an intoxicating substance-any intoxicating substance-including, but not limited to, alcohol. TEX. PENAL CODE § 49.01(2)(A).[1] The State is not bound to prove any particular substance in order to prove intoxication under Section 49.01(2)(A). Precisely what that intoxicating substance may be, we have said, is not elemental. Gray v. State , 152 S.W.3d 125, 132 (Tex. Crim. App. 2004) ; see also State v. Barbernell , 257 S.W.3d 248, 253-54 (Tex. Crim. App. 2008) (describing Gray as rejecting the proposition "that the type of intoxicant is an element of DWI"). But the State must show that the defendant has lost the normal use of his physical or mental faculties "by reason of the introduction of" some intoxicating substance. It does not suffice to establish DWI if the State proves only that a defendant was driving a motor vehicle in a public place while lacking the normal use of his physical or mental faculties. The "introduction" of some kind of intoxicating substance into the defendant's system that causes the impairment must be proven before it may be said that the State has established the offense of driving while intoxicated , even if the "type" of intoxicant is not elemental.
The jury charge in the instant case gave the full definition of "intoxicated" in the abstract instructions of law. This included as intoxicating substances: "alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of *90 those substances, or any other substance into the body [.]" It was not reversible error for the trial court to include the full definition in the abstract instructions because even those portions of the definition that do not apply to the facts proven in a particular case, and are therefore "superfluous," "do[ ] not produce[ ] reversible error ... because [they have] no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs." Plata v. State , 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996). But to include the full definition of "intoxicated" in the application paragraph, as the trial court did in this case, may be problematic if that full definition includes certain categories of intoxicant that the evidence simply does not show the defendant may have ingested in a particular case.[2] In that event, the trial court has failed to tailor the jury charge to reflect "the law applicable to the case [,]" as required by Article 36.14 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 36.14. I agree with the Court today that such an application paragraph could be erroneous on the facts of a given case, Majority Opinion at 84, and in some of those cases, the error could prove to be reversible.
But not in this case. Here, there was some evidence that Appellant had been drinking. Though Appellant himself denied it, the arresting officer detected a faint odor of alcohol, as did both the driver and passenger of the car that Appellant rear-ended. So the application paragraph rightly included alcohol in its enumeration of intoxicating substances shown by the evidence to have potentially caused Appellant to lose the normal use of his mental or physical faculties. There was also evidence that Appellant had pills in his pocket. Presiding Judge Keller argues in her dissent, and I agree, that the evidence is sufficient to establish that some of these pills were hydrocodone. Dissenting Opinion at 88. I also agree with Presiding Judge Keller that the intoxicating effects of hydrocodone are sufficiently common knowledge that there is no need for expert testimony to establish that fact. Dissenting Opinion at 88-89. Hydrocodone, it should be emphasized, is both a controlled substance-Penalty Group 1-and a drug. For these reasons, I agree with Presiding Judge Keller's conclusion that the trial court did not err to include, at least, "a controlled substance, a drug, [or] a combination of ... those substances" within the application paragraph's definition of intoxicants shown by the evidence in this particular case to have potentially been ingested by Appellant.[3] Ouellette v. State , 353 S.W.3d 868, 870 (Tex. Crim. App. 2011).
We cannot simply reverse the judgment of the court of appeals, however. That court held that the trial court committed two errors in this case. Besides concluding that there was jury charge error, the court *91 of appeals also held that the trial court erred to permit the State to introduce the evidence of hydrocodone. Burnett v. State , 488 S.W.3d 913, 921-22 (Tex. App.-Eastland 2016). The court of appeals did not assess whether this alternative error was harmless, however, because it concluded that the jury charge error was, by itself, reversible. Id. at 922-25. In its petition for discretionary review, the State has not challenged the court of appeals' alternative holding. In my view, the appropriate disposition of the case is to vacate the court of appeals' judgment and remand the cause to that court for further proceedings not inconsistent with this dissent (as well as Presiding Judge Keller's). I would leave it open to the court of appeals to revisit its holding with respect to the admissibility of the evidence regarding Appellant's possession of hydrocodone, subject to later discretionary review. But that court should at least decide in the first instance whether, if there was error in the admission of the evidence of hydrocodone, it was harmless error.
Because the Court instead affirms the judgment of the court of appeals, I respectfully dissent.

Burnett was also arrested and convicted for unlawful carrying of a weapon. Like the DWI sentence, he was fined $1,000 and sentenced to 120 days' confinement in the county jail, which was probated for eighteen months.

Burnett says that "a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body ...," should have been removed from the definition of "intoxication" in the jury charge. Tex. Penal Code § 49.01(2)(A).

Chappa did not hear much of what Burnett said because he was on the phone with the police.

According to Coapland, Burnett exhibited all six clues of intoxication during the HGN test, four of eight clues during the walk-and-turn test, and two of four clues during the one-leg-stand test.

The State argued that,
I believe the Court of Criminal Appeals has held that contextual evidence is admissible. It's the same transaction. Same transaction contextual evidence is admissible. What the Court has held verbatim is, you know, evidence did not occur in a vacuum and the jury has a right to hear what happens prior to the event and subsequently after the event.
And I believe this is all within the same transaction and is admissible. It goes to the credibility of [Burnett], his denial of knowing what's in the bag, to then admitting to having a prescription. Then to the-the issues I believe we have to address are whether they're admissible. As I said, it's the same transaction contextual evidence....

The court of appeals held that the trial judge abused his discretion when he admitted the pills and related pill evidence as same-transaction contextual evidence. Burnett v. State , 488 S.W.3d 913, 920 (Tex. App.-Eastland 2016).

The only portion of the "loss of faculties" definition omitted from the charging instrument in Ouellette was "or any other substance." Tex. Penal Code § 49.01(2)(A).

In Ouellette we cited Alvarado v. State , 704 S.W.2d 36 (Tex. Crim. App. 1985) (op. on reh'g), to support the proposition that submitting to the jury an entire statutory definition when only a portion of it is relevant could be error. In Alvarado , the appellant was convicted of injury to a child. Alvarado , 704 S.W.2d at 37. On appeal, she argued in part that, because the injury-to-a-child statute is a result-oriented offense, the definition of culpable mental states in the charge should have been limited to only those that relate to the result of the offense. Id. We agreed, holding that it was error not to tailor the culpable mental-states definitions to the result of a defendant's conduct when the offense with which he is charged is a result-oriented crime. Id. Later, we applied this same reasoning to nature-of-conduct offenses. Price v. State , 457 S.W.3d 437, 441 (Tex. Crim. App. 2015).

The State provided the following excerpt from Judge Cochran's opinion,
I think that appellant is technically correct. However, I would take this opportunity to overrule Garcia[ v. State, 747 S.W.2d 379 (Tex.Crim.App. 1988) ] which held that, in a DWI prosecution, "the type of intoxicant used, i.e., alcohol, a controlled substance, a drug, or a combination of two or more of these substances, becomes an element of the offense and critically necessary to the State's proof." Garcia is no longer good law because the DWI statute has been amended so that the type of intoxicant that a person consumed to become physically or mentally impaired is of no legal significance.
When Garcia was decided in 1988, there were only three possible "intoxicants" that were subject to prosecution under the DWI statute: alcohol, a controlled substance, or a drug. A driver who was impaired because of the ingestion of any one of these three substances, either alone or in combination, could be convicted of DWI. In 1993, the Legislature amended the definition of "intoxicated" to include "alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance." Any other substance at all. Under current law, if a person eats too many M & Ms either alone or in combination with alcohol, drugs, water, or whatever such that his mental and physical faculties are impaired, he may be prosecuted for DWI. However, "eating M & Ms" is clearly not an element of the offense of DWI. "Intoxicated" is an element of DWI, and it is a physical state of being, regardless of the specific substance which caused the impairment.
The purpose of DWI laws, both here in Texas and across the nation, is to prevent and punish the "carnage caused by drunk drivers." These laws are not focused upon the type of substance that caused the driver to become "drunk" and then get behind the wheel of a car. The law does not differentiate between the drunk driver who was intoxicated because he consumed alcohol, or injected heroin, or sniffed glue, or took prescription medicine. It is the act of driving while one's mental or physical faculties are impaired that is inherently dangerous and the target of our DWI law.
Gray v. State , 152 S.W.3d 125, 136 (Tex. Crim. App. 2004) (Cochran, J., dissenting) (emphasis removed) (footnotes omitted).

In this way Gray is like Ouellette -in both cases there was expert testimony that the signs of intoxication observed by the police could have resulted from ingesting drugs and/or alcohol. In Ouellette , that evidence was that Soma and alcohol are both CNS depressants that cause similar symptoms of intoxication. Ouellette , 353 S.W.3d at 870. In Gray , the charge was that his intoxication could have been caused by alcohol alone or "by reason of the introduction of alcohol into his body, either alone or in combination with Respiratol, Zoloft, Klonopin and/or Depical[,]" all of which are also CNS depressants. Gray , 152 S.W.3d at 126-27.

Kirsch v. State , 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) ; see Ouellette , 353 S.W.3d at 870 ("The jury charge in this case reflected the law as it applied to the evidence produced at trial."). In Kirsch , we explained that the State can prove intoxication under an "impairment" theory or per se theory of intoxication. Kirsch , 306 S.W.3d at 743. We also noted that the two theories are not mutually exclusive and that, "as long as there is evidence that would support both definitions, both theories are submitted in the jury charge." Id.

Although the police did not specify whether the white pills or blue pill might be hydrocodone, they repeatedly refer to "the pills" as possibly being hydrocodone. Based on the fact that there was only one blue pill but multiple white pills, we understand the officers to be referring to the white pills as hydrocodone.

We stated in Ouellette that,
In short, the appellant appeared intoxicated, police found in her vehicle a drug that could have produced the observed symptoms of intoxication , and she refused a blood test. Although there was no direct evidence that the defendant consumed the drug, there was evidence from which a rational juror could have found that the defendant did so.
The jury charge in this case reflected the law as it applied to the evidence produced at trial. We affirm the judgments of the courts below.
Ouellette , 353 S.W.3d at 870 (emphasis added); see Smithhart v. State , 503 S.W.2d 283, 286 (Tex. Crim. App. 1973). In Smithhart , we stated that,
The missing essential element is a showing which would connect the symptoms observed by [the arresting officer] to a conclusion that appellant was under the influence of a drug to a degree rendering him incapable of safely operating a vehicle. Just as there was an absence of evidence to qualify [the arresting officer] to give his opinion on this point, so was there an absence of any other evidence from which the jury could draw such a conclusion. Unlike alcoholic intoxication, which is 'of such common occurrence' that its recognition requires no expertise as in Inness v. State [ 106 Tex.Crim. 524, 293 S.W. 821 (1926) ], this court is unable to say that such is the case with being under the influence of drugs.
Smithhart , 503 S.W.2d at 286 (citation omitted); see Paschall v. State , 285 S.W.3d 166, 181 (Tex. App.-Fort Worth 2009, pet. ref'd) (Dauphinot, J., dissenting) ("Slurred speech, constricted pupils, and swaying may indicate intoxication, but such evidence only goes to the element of lack of normal use. It is not, in and of itself, proof of introduction into the body of a drug or controlled substance or alcohol, a necessary element of intoxication that the State must prove.").

353 S.W.3d 868 (Tex. Crim. App. 2011).

A full statutory intoxication charge instructs the jury that "intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." Tex. Penal Code § 49.01(2)(A).

Ouellette , 353 S.W.3d at 870.

Id.

As a general rule, if evidence is admitted without objection, that evidence enjoys a status equal to that of all other admissible evidence. Marin v. State , 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) ("All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong."); Armstrong v. State , 718 S.W.2d 686 (Tex. Crim. App. 1985) (Without a timely and specific objection to the admission of evidence during trial, any error in admitting the evidence is waived); Coble v. State , 330 S.W.3d 253 (Tex. Crim. App. 2011) (Erroneously admitting evidence will not result in reversal when other such evidence was received without objection).

Gray v. State , 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004).

Evidence of the pills was erroneously admitted. Appellant's possession of the pills did not constitute same transaction contextual evidence; there was no expert testimony that the pills were in fact hydrocodone; and there was no evidence that the pills had been ingested by Appellant. Once the court of appeals decided that evidence related to the pills was inadmissible, it logically concluded that the jury charge should have been limited by the evidence properly admitted:
As we have discussed, in the case before us, there is no competent testimony upon which a rational juror could have found that Appellant consumed hydrocodone and that such consumption contributed to his intoxication. Because only a portion of the statutory definition is relevant to the facts of this case, we hold that the trial court erred when it included the whole definition of intoxication in both the definition section and application paragraph of the jury charge.
Burnett v. State , 488 S.W.3d 913, 923 (Tex. App.-Eastland 2016) (citations omitted).

686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Burnett , 488 S.W.3d at 925. With regard to harm, the majority concluded that, because we did not grant review of the lower court's harm analysis, the Court will not review it. While I am not sure I agree with that narrow an interpretation of the issue presented for review, I am in agreement with the ultimate outcome.

The court of appeals's opinion is actually consistent with the sentiment expressed by Judge Meyers' dissent in Ouellette , wherein he takes issue with the Court's decision because it fails to address the admissibility of the pills in the first place. See Ouellette v. State , 353 S.W.3d 868, 871 (Tex. Crim. App. 2011) (Meyers, J., dissenting) ("Under a legal sufficiency standard of review, we consider all evidence properly admitted at trial," but "legal sufficiency is not the standard used to determine if a jury charge is correct."). However, since the appellant in Ouellette failed to object to the inclusion of the evidence of the pills, I believe the Court decided Ouellette correctly.

See Video at 16:24.

See Video at 16:36.

United States v. Brown , 553 F.3d 768, 773 n.1 (5th Cir. 2008).

State v. Richardson , 150 Ohio St.3d 554, 84 N.E.3d 993, 998 (Ohio 2016). See also Montero v. State , 996 So.2d 888, 891 (Fla App. 2008) ("Hydrocodone and alprazolam are two widely-abused prescription drugs that have well-known intoxicating effects.").

503 S.W.2d 283, 286 (Tex. Crim. App. 1973).

Ouellette v. State , 353 S.W.3d 868 (Tex. Crim. App. 2011).

The information did not allege, and the jury was not charged on, the theory that Appellant had a blood alcohol concentration in excess of 0.08.

Instead, the information alleged DWI under the terms of Section 49.01(2)(A), and included the full definition of "intoxicated." Thus, the jury charge, including the application paragraph, conformed with the charging instrument. The issue in this case is whether the evidence would support conviction for all types of intoxicant listed in the information.

It is not clear to me that hydrocodone would fit within the definition of a "dangerous drug," as that term is set out in Section 483.001(2) of the Health and Safety Code. Tex. Health & Safety Code § 483.001(2). But I am not inclined to regard the inclusion of that definition, if error, as reversible error. A jury instructed that it could rely on the presence of hydrocodone as an intoxicating "controlled substance" or "drug" would not likely have felt the need to resort to the "dangerous drug" part of the definition in order to find that Appellant's loss of mental or physical faculties was caused by some intoxicant or combination of intoxicants.