

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-19-00054-CR

---

ANDREW HAMILTON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 17-F-1053-202

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Andrew Hamilton (Hamilton) appeals his conviction for capital murder. A Bowie County jury found Hamilton guilty of shooting his uncle Winfred Hamilton (Winfred) while committing robbery. Hamilton was sentenced to life without parole. On appeal, Hamilton claims that (1) three errors in the trial court's charge to the jury egregiously harmed him and (2) there is insufficient evidence to support the costs of court in the trial court's judgment.

Because we find that any error in the trial court's charge did not result in egregious harm, we overrule Hamilton's first point of error. That said, we sustain Hamilton's second point of error and modify the trial court's judgment to reflect the proper amount of court costs. As modified, we affirm the trial court's judgment.

## I. Background

Winfred lived with his brother, Roland Hamilton (Roland), in Wake Village, a suburb of Texarkana. At various times, Hamilton stayed with his uncles. On a Thursday night in September 2017, Roland came home from choir practice and found Winfred lying on the floor, as he often did before going to bed. A blanket covered Winfred's head. When Winfred did not rouse after Roland spoke to him, Roland pulled the blanket away to see that Winfred had been shot in the head. Roland also found that his safe had been moved and ransacked and that the Oldsmobile car he let Winfred use was gone.

Roland testified that he kept his watches, rings, coins, a .357 pistol, a .380 Cobra pistol, and important papers in his safe. After the robbery, Roland discovered that the safe, which he

normally stored in a closet in his house, was in his garage with a cover over it. The door to the

safe had been "busted," and all the contents, except for the important papers, were gone.

The State also called other witnesses who described seeing Hamilton on the night and day

following Winfred's murder. These witnesses testified that Hamilton was in possession of a watch

and pistols matching the description of the items Roland said were his and that had been stored in

his safe.

Hamilton was arrested the day after Winfred's murder. He was located driving the

Oldsmobile car that Roland gave Winfred to use. Hamilton's blood was also found on the door of

Roland's safe.

The indictment alleged that Hamilton caused the death of Winfred with a firearm and that

Hamilton "was then and there in the course of committing or attempting to commit the offense of

robbery of Winfred Hamilton." The trial court's charge, though, instructed that the jurors could

find Hamilton guilty of capital murder if they found, beyond reasonable doubt, that Hamilton

"intentionally cause[d] the death of . . . WINFRED HAMILTON, by shooting WINFRED

HAMILTON with a firearm, and [Hamilton], was then and there in the course of committing or

attempting to commit the offense of robbery . . . ." That is, the indictment alleged Hamilton killed

Winfred in the course of robbing *him*, while the charge only required a finding that Hamilton killed

Winfred while in the course of committing robbery without naming the victim of the robbery.

## II.     Jury Charge Error

In his first point of error, Hamilton claims three errors in the jury charge:  (1) the offense

of theft was not adequately defined in the abstract paragraph, (2) the "application portion of the

3

charge did not apply theft (and therefore robbery)," and (3) the application paragraph did not limit the robbery to Winfred. These purported errors, according to Hamilton, caused him egregious harm.[1]

## A. Standard of Review

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id*. (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

The level of harm necessary to require reversal due to jury charge error depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Here, because Hamilton did not object to the charge, we will not reverse unless the record shows the error resulted in

---

[1]*See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

egregious harm, *see Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza*, 686 S.W.2d at 171), so that he did not receive a fair and impartial trial, *see Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.).

"Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole." *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171). Direct evidence of harm is not required to establish egregious harm. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

## B.     Theft Was Adequately Defined in the Charge

As for his first complaint, Hamilton concedes that the charge included a definition of theft. As part of the abstract portion, the charge instructed, "'Theft' as used herein is the unlawful appropriation of the corporeal personal property of another with the intent to deprive such person of said property."[2] Next, the charge instructed, "'Appropriation' and 'appropriate,' as those terms are used herein, mean to acquire or otherwise exercise control over property other than real property. Appropriation of property is unlawful if it is without the owner's effective consent." Also included in the charge was the following: "'Effective consent' means assent in fact, whether

_____

[2]Hamilton claims this definition of theft was not included in the "abstract portion of the charge." A jury charge is comprised of an application paragraph and abstract paragraphs. *See Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012). "[A]bstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Thus, contrary to Hamilton's argument, we find that the abstract portion of the trial court's charge did include a definition of theft.

express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception or coercion or force or threats."

Hamilton does not explain what is deficient about the above definition of theft. Instead, he suggests that the charge should have included the following definition: "A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. Appropriation of property is unlawful if it is without the owner's effective consent." We see no substantive difference between this language and the language in the trial court's charge. Both describe theft as unlawful appropriation of another's property with the intent to deprive that owner of the property, and both state that such appropriation is unlawful if done without the effective consent of the owner.

It is true that the Texas Code of Criminal Procedure requires the trial court to instruct the jury on "the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. Even so, "the charge must also be tailored to the facts presented at trial." *Burnett v. State*, 541 S.W.3d 77, 84 (Tex. Crim. App. 2017).[3] As an example, in *Burnett*, the trial court erred to include language regarding intoxication due to ingestion of drugs as well as alcohol where the evidence only supported a finding of intoxication by ingestion of alcohol. *Id*. at 84, 85.

The trial court's definition of theft included language from the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 31.03(e). That said, Section 31.03(e) lists many offenses that constitute theft of varying levels. Offenses are categorized by the value of the property taken or the type of

---

[3] The court in *Burnett* noted that it had "previously suggested that giving an entire statutory definition may be error when only a portion of a statutory definition is relevant to the elements of the offense." *Burnett*, 541 S.W.3d at 81.

6

property.  For example, there are several offenses based on theft of various kinds of livestock, one offense for taking property from a corpse or grave, and one for taking an official ballot.

Here, theft was relevant to the charge and evidence only so far as it was a predicate to robbery.  One commits robbery by "committing theft . . . with intent to obtain or maintain control of the property" and then "intentionally, knowingly or recklessly caus[ing] bodily injury to another" or "intentionally or knowingly threaten[ing] or plac[ing] another in fear of imminent bodily injury or death."  TEX. PENAL CODE ANN. § 29.02.  The manner of theft is unimportant, and the trial court need only define theft as described by the evidence at trial.  Thus, "[t]he jury charge in this case reflected the law as it applied to the evidence produced at trial." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011).[4]  For these reasons, there is no error in the definition of theft in the jury charge.[5]

---

[4]The jury charge in *Ouellette* included a definition of intoxication "by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body." *Ouellette*, 353 S.W.3d at 869.  The evidence in that case included (1) the smell of alcohol on Ouellette's breath; (2) Soma, Darvocet, and a third type of pill found in the car; (3) Ouellette's refusal to submit to a blood test, which she at first offered to take to show she had not taken any of the pills in a month; and (4) testimony that Soma, as well as alcohol, are central nervous system depressants. *Id*. at 869–70.  In *Burnett*, pills were found that may have been hydrocodone, but this was not proved definitively.  There was no testimony that, even if the pills were hydrocodone, such a drug operated as a central nervous system depressant. *Burnett*, 541 S.W.3d at 84–85.  These circumstances distinguished *Burnett* from *Ouellette*. *Id*.

[5]Hamilton's second point of error claims that the application paragraph should have included the definition of theft as an element of robbery.  The Texas Court of Criminal Appeals "ha[s] consistently held that the allegation of the constituent elements of the offense constituting the aggravating feature of a capital murder charge is unnecessary, even in the face of a motion to quash." *Trevino v. State*, 815 S.W.2d 592, 619 (Tex. Crim. App. 1991), *rev'd on other grounds*, 503 U.S. 562 (1992) (per curiam).  We overrule the second point of error.

**C. Any Error in Failure of Charge to Track Allegations in Indictment Was Harmless**

Next, Hamilton complains that the jury charge did not specify that Winfred, the murder victim, was also the robbery victim. The indictment alleged Hamilton killed Winfred while robbing Winfred, specifically.

Assuming, without deciding, that the inconsistency between the indictment and the charge amounted to charge error, we find that Hamilton cannot establish that he suffered egregious harm.[6] When we examine a claim of egregious harm, we consider (1) the full charge, (2) "any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused," and (3) arguments of counsel. *Almanza*, 686 S.W.2d at 174; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).

**1. The Trial Court's Charge**

The trial court's charge, beyond Hamilton's complaint that it should have limited the allegation of robbery to Winfred as the victim, accurately presented the applicable law and explained the requirements for finding the defendant guilty.

**2. The Record**

The evidence of Hamilton's guilt was substantial and compelling. Indeed, Hamilton admitted that he broke into Roland's safe and took jewelry, coins, a car key,[7] and a .357 pistol.

---

[6]Because Hamilton lodged no objection to the trial court, we will not reverse the judgment unless Hamilton suffered egregious harm. *See Almanza*, 686 S.W.2d at 171. That is, Hamilton must have been deprived of a fair and impartial trial. *Id*. "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).

[7]Among the items retrieved upon Hamilton's arrest was a key fob for a Mercedes. Roland owned a Mercedes. This leads to the inference that Hamilton acquired the spare key fob from Roland's safe.

8

Hamilton claimed that he took the .380 Cobra pistol, but took it several months earlier, and that, in the interim, it had been stolen from him. Yet, three witnesses testified that they saw Hamilton with one or both pistols the night of the murder and that Hamilton was trying to sell the guns as well as various pieces of jewelry.[8] Two of those witnesses also testified that Hamilton told them he had just shot someone. While Hamilton told law enforcement that he was with a young woman named Ebony the night Winfred was killed, Ebony testified that she had been at the fair with three friends that night and was never with Hamilton that evening. Also, Hamilton was arrested after being stopped while driving Winfred's car.[9]

Hamilton also told the jury that he broke into Roland's safe with a crowbar.[10] The State presented evidence that, on the day before he killed Winfred, Hamilton asked on Facebook if anyone had a crowbar. A witness also testified that he in fact gave Hamilton a crowbar in the days right before the killing. That crowbar was later found in Roland's closet.

### 3.     The Arguments

In its opening statement, the State described evidence it intended to offer during trial. The State also said the jury would hear that Hamilton "stole some other stuff" as well as the car Winfred drove, that Hamilton got the murder weapon from Roland's closet, and that after killing Winfred, Hamilton sold that pistol. In closing argument, the State told the jury that Hamilton had taken

---

[8]When Hamilton was arrested, he was wearing at least one of Roland's watches.

[9]While the record suggests that Roland owned the car, Roland said he had effectively given it to Winfred for Winfred's exclusive use. Thus, Winfred had a greater right of possession to that car than Hamilton. *See Garza v. State*, 344 S.W.3d 409, 413 (Tex. Crim. App. 2011).

[10]Hamilton was not excluded as a contributor of blood found on the safe, and he acknowledged cutting himself as he broke into the safe.

9

items belonging to Roland as well as Winfred's cell phone and car. Neither party made any argument about whether the jury had to find Hamilton guilty of robbing Winfred specifically.

Finally, we point out that only one robbery occurred here. The "gravamen of robbery offenses, including aggravated robbery, is the defendant's assaultive conduct against each victim." *Ex parte Denton*, 399 S.W.3d 540, 546 (Tex. Crim. App. 2013) (orig. proceeding). The evidence showed Hamilton stole property from both Roland and Winfred, but only exhibited assaultive conduct against Winfred. Roland was not home when Hamilton broke into Roland's safe; obtained property, including a .380 pistol; shot Winfred in the head with that pistol; and then fled with Winfred's car and cell phone. The only robbery was of Winfred, who was then intentionally killed by Hamilton.[11]

For these reasons, we find that even if failure to charge the jury in specific accordance with the indictment was error, it was harmless. As a result, we overrule Hamilton's challenges to the jury charge.[12]

## III. Modification of Court Costs in Judgment

In his second point of error, Hamilton points out an inconsistency in the clerk's record. While the judgment imposes court costs of $294.00, the court's bill of costs only supports $274.00 in court costs. The State agrees.

---

[11]The gravamen of capital murder is the death of the decedent along with the alleged aggravating circumstances. *See Gardner v. State*, 306 S.W.3d 274, 302 (Tex. Crim. App. 2009).

[12]As noted above, Hamilton also argues that the cumulative effect of the three purported errors egregiously harmed him. As we find only one harmless error in the charge, there is no cumulative effect of multiple charge error.

10

We have the authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act *sua sponte* and may have a duty to do so." *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)); *see French*, 830 S.W.2d at 609. The Texas Rules of Appellate Procedure also provide direct authority for this Court to modify the trial court's judgment. TEX. R. APP. P. 43.2. We, therefore, sustain Hamilton's second point of error and modify the trial court's judgment to reflect court costs of $274.00.

## IV. Conclusion

We overrule Hamilton's challenges to the trial court's charge, but we sustain his point of error with respect to the court costs and modify the trial court's judgment to reflect court costs of $274.00. As modified, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    October 25, 2019
Date Decided:      December 16, 2019

Do Not Publish