

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00058-CR
No. 02-24-00059-CR
No. 02-24-00060-CR
No. 02-24-00061-CR

_____

BRYAN HUCABEE, Appellant

V.

THE STATE OF TEXAS

─────────────────────────────────────────────

On Appeal from the 158th District Court
Denton County, Texas
Trial Court Nos. F21-3123-158, F21-3124-158, F21-3125-158, F21-3126-158

─────────────────────────────────────────────

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Bryan Hucabee[1] appeals his convictions on three counts of aggravated assault against a public servant and one count of criminal mischief.[2] In three issues,[3] Hucabee argues that (1) the trial court erred by failing to include the statutory definition of "government"—which intertwines with the definition of "public servant"—in the jury charge and (2) the evidence was insufficient to establish that any of the assault victims were public servants. We will affirm.

## I. BACKGROUND

In May 2021, Hucabee's wife Krystel ran to her neighbors' house and told them that she was afraid that Hucabee had shot himself as he had previously done in 2017. They called 911.

Many officers and firefighters—including Flower Mound police officers Adam Quintana, Gregory Hall, and John Styne-Burns—were dispatched to Hucabee's

---

[1]The appellant's last name is spelled "Hucabee" and "Huckabee" at various places in the record. Further, the appellant and the State spell the name differently in their briefs. Based on our review of the record, we believe "Hucabee" to be the correct spelling.

[2]The trial court established separate cause numbers for each of the four counts. Hucabee filed identical appellate briefs in each case, but the issues raised therein relate solely to his aggravated-assault convictions. To the extent that he intended to challenge his criminal-mischief conviction, he has forfeited any such complaint due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011).

[3]As Hucabee acknowledges, his first and second issues are identical. His first issue addresses his first aggravated-assault conviction, and his second issue applies the same arguments to his remaining aggravated-assault convictions.

residence. Krystel told the responding officers—who were wearing uniforms with police insignia—that she believed that Hucabee had shot himself but was still alive and needed help. Because Krystel had reported that Hucabee was armed, the officers worked to formulate a plan to maximize their safety while checking on his welfare.

After Hucabee did not answer Officer Quintana's phone calls, it was decided that Officers Quintana, Hall, and Styne-Burns would approach the front door; Officer Styne-Burns would open it; and another officer would fly a drone into the house to assess the situation. As a safety precaution, the officers used a shield and put on additional body armor. As the front door was opened, Hucabee began firing at the officers with a semi-automatic rifle.

Although the officers were ultimately able to get safely away from the front door, they suffered a myriad of injuries. Officer Quintana was taken to the hospital with injuries to his face, arm, and neck and ultimately had to have surgery to remove shrapnel from his neck. Officer Hall had injuries on his arms and neck and also had to go to the hospital to have shrapnel removed. A bullet passed through Officer Styne-Burns's left sleeve and another struck him in the center of his chest; his body armor saved his life. He also had a shrapnel wound on his right arm.

After the shooting, Hucabee barricaded himself in his house and engaged in an all-night standoff with law enforcement. After other attempts to end the standoff were unsuccessful, officers deployed a robot to try to enter Hucabee's residence. As

soon as the robot opened the front door, Hucabee opened fire on it, causing over $9,000 worth of damage.

After approximately twelve hours, Hucabee came out of the house and surrendered. Shortly after surrendering, Hucabee was given medical care. The treating paramedics found him to be alert and clearheaded.

Ultimately, Hucabee was charged with three counts of aggravated assault against a public servant and one count of criminal mischief. *See* Tex. Penal Code Ann. §§ 22.02(a)(2), (b)(2)(B), 28.03(a)(1). He pleaded not guilty, and a jury trial was held. After hearing the evidence, the jury found Hucabee guilty of all charges. Following the presentation of additional punishment evidence, the jury assessed his punishment at forty years' incarceration on each aggravated-assault-against-a-public-servant count and 180 days in jail on the criminal-mischief count. The trial court sentenced him accordingly. This appeal followed.

## II. DISCUSSION

As noted, Hucabee raises three issues on appeal. But, for the reasons set forth below, none of these issues provides a valid basis for reversing his convictions.

### A. Charge Error

In his first and second issues, Hucabee contends that the trial court erred by failing to include the Penal Code's definition of "government" in the jury charge. The State concedes the error but argues that it did not cause sufficient harm to warrant reversal. We agree with the State.

4

**1. Standard of Review and Applicable Law**

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Preservation of charge error does not become an issue until we assess harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* "[J]ury charge error requires reversal when the defendant has properly objected to the charge and we find 'some harm' to his rights." *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). "When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.* at 743–44 (quoting *Almanza*, 686 S.W.2d at 171). "Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Id.* at 744.

When assessing whether the error was sufficiently harmful to require reversal, we consider (1) the entire charge; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Almanza*, 686 S.W.2d at 171); *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766,

777 (Tex. Crim. App. 2011)). Neither party bears the burden to show harm. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).

### 2. The Charge Was Erroneous

A trial court is required to give the jury a written charge that, among other things, "set[s] forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14. The "law applicable to the case" includes "statutory definitions that affect the meaning of the elements of the offense." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *see Watson v. State*, 548 S.W.2d 676, 679 n.3 (Tex. Crim. App. 1977) ("The trial court should always include the statutory definitions in its jury instructions where applicable.").

To establish that Hucabee had committed the charged aggravated-assault-of-a-public-servant offenses, the State had to prove, inter alia, that at the time of the assaults, he knew that the victims were public servants lawfully discharging an official duty. *See* Tex. Penal Code Ann. § 22.02(b)(2)(B). Under the Texas Penal Code, a "public servant" includes "a person . . . employed . . . as . . . an officer, employee, or agent of government." *Id.* § 1.07(41). The Penal Code defines "government" as "the state; . . . a county, municipality, or political subdivision of the state; or . . . any branch or agency of the state, a county, municipality, or political subdivision." *Id.* § 1.07(24).

Because one element of Hucabee's charged aggravated-assault offenses was that he knew that the victims were public servants and because "public servant" and "government" are statutorily defined terms with intertwining definitions, the trial

6

court should have defined "government" in its charge. *See McIlvennia v. State*, No. 03-14-00352-CR, 2016 WL 3361185 at *7 (Tex. App.—Austin June 10, 2016, pet. ref'd) (mem. op., not designated for publication); *see also Burnett v. State*, 541 S.W.3d 77, 84 (Tex. Crim. App. 2017) (acknowledging that "the trial court is obliged to include in the jury charge statutory definitions that affect the meaning of elements of the crime" (citing *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009))); *Caldwell v. State*, No. 02-23-00071-CR, 2023 WL 8467375, at *4 (Tex. App.—Fort Worth Dec. 7, 2023, no pet.) (mem. op., not designated for publication) ("Because one element of [appellant's] charged offense was that he was 'intoxicated' and because 'intoxicated' and 'alcohol concentration' are statutorily defined terms with intertwining definitions, the trial court should have defined 'alcohol concentration' in its charge."). Thus, the trial court erred by failing to include this definition in the charge. *See McIlvennia*, 2016 WL 3361185, at *7; *see also Caldwell*, 2023 WL 8467375, at *4.

### 3. The Error Did Not Cause Hucabee Egregious Harm

Having concluded that the charge was erroneous, we must determine whether Hucabee was harmed. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). Because Hucabee did not object to the jury charge, he is not entitled to reversal unless the error caused him egregious harm. *See Almanza*, 686 S.W.2d at 171.

The egregious-harm standard is difficult to meet and requires a showing that the appellant was deprived of a fair and impartial trial. *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). In making an egregious-harm determination, we

must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Gelinas v. State*, 398 S.W.3d 703, 708–710 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio*, 353 S.W.3d at 777 (citing *Ngo*, 175 S.W.3d at 750).

Here, the record does not show egregious harm. Hucabee argues that the failure to include the statutory definition of "government" in the charge vitally affected a defensive theory because it effectively prevented him from arguing that the assault victims—Officers Quintana, Hall, and Styne-Burns—were not public servants under the Penal Code's definition. But Hucabee never questioned whether the officers were, in fact, public servants.[4] Rather, he merely asserted that at the time of the

---

[4]The record contains overwhelming evidence that the assault victims were police officers and that they were discharging their official duties and wearing uniforms with police insignia when the offenses occurred.

8

assault, he was not aware that the people at whom he was shooting were police

officers.[5] This distinction is evident from Hucabee's closing argument:

> I mean, the elements, were they peace officers, were they executing their duties, all of those things, I don't have a problem with any of that. Obviously we didn't ask questions about any of that because it's not the issue.
>
> . . . .
>
> . . . But just because they were public servants doesn't automatically make him guilty of aggravated assault on a public servant.
>
> You can find against [Hucabee] on all of the other issues but . . . make a determination that . . . there's a reasonable doubt whether or not he knew that they were police officers.

Because Hucabee conceded that the assault victims were public servants, he was not

actually—much less egregiously—harmed by the omission of the statutory definition

[5]The charge instructed the jurors that "[an] actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant." Though he did not raise this as a stand-alone issue, Hucabee asserts that this instruction was erroneous because it "did not tell the jurors that they could reject the presumption or that they must still find beyond a reasonable doubt that the officer[s] w[ere] . . . 'public servants.'" According to Hucabee, this supposed additional error supports the conclusion that the trial court's failure to include the definition of "government" caused him egregious harm. But even if we were to assume that this instruction was erroneous, the error would have no bearing on the harm—if any—caused by the omitted definition. The presumption in question applies only to the issue of whether Hucabee knew that the victims were public servants, not to the issue of whether they actually satisfied the statutory definition. Because the two charge errors identified by Hucabee relate to separate issues, one does not synergistically increase the harm caused by the other. *Cf. Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of pet.) (pointing out that "[a] string of harmless errors does not arithmetically create reversible, cumulative error" and admonishing that when conducting a cumulative-error analysis, courts should "[i]nstead . . . look for multiple errors [that] synergistically achieve the critical mass necessary to cast a shadow upon the integrity of the verdict" (cleaned up)).

9

of "government" from the charge. *See Carr v. State*, No. 14-09-00322-CR, 2010 WL 2835663, at *9 (Tex. App.—Houston [14th Dist.] July 20, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that erroneous charge instruction that "a public servant means a police officer" did not cause egregious harm because, inter alia, the appellant did not dispute the officer's status as a public servant and "the fact that a police officer is a public servant was not controverted" at trial); *Marshall v. State*, No. 06-03-00215-CR, 2006 WL 1996400 at *2 (Tex. App.—Texarkana July 19, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that punishment charge errors that "could have affected only the jury's findings on whether [appellant] had committed [certain] prior offenses" did not vitally affect a defensive theory or cause egregious harm because appellant had not argued that he did not commit the prior offenses and had effectively conceded the issue); *see also Cosio*, 353 S.W.3d at 777 (clarifying that to be "egregious," harm must be actual, not merely theoretical); *Schwalbach v. State*, Nos. 02-14-00216-CR, 02-14-00217-CR, 2015 WL 601746, at *4 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for publication) ("[T]here is no egregious harm if the issue is uncontested . . ." (citing *Olivas v. State*, 202 S.W.3d 137, 147–48 (Tex. Crim. App. 2006))).

Accordingly, we overrule Hucabee's first and second issues.

## B. Sufficiency of the Evidence

In his third issue, Hucabee contends that the evidence was legally insufficient to support the verdict because the State failed to prove that the assault victims were public servants. We disagree.

When reviewing the sufficiency of the evidence to support an essential element of a crime, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the challenged essential element beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655–56 (Tex. Crim. App. 2021); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Here, the challenged element is whether Hucabee knew that the assault victims were public servants lawfully discharging an official duty. *See* Tex. Penal Code Ann. § 22.02(b)(2)(B). According to Hucabee, no rational juror could have found that the State proved this element beyond a reasonable doubt because it did not present any evidence about whether the Flower Mound Police Department is a "branch or agency of the state, a county, municipality, or political subdivision." *See id.* § 1.07(24), (41). But this argument ignores Hucabee's defensive theory and runs counter to Texas caselaw regarding the Penal Code's definition of public servant.

First, as noted, Hucabee conceded that the assault victims were, in fact, public servants lawfully discharging an official duty; his defensive theory was merely that he did not know that the people at whom he was shooting were police officers. Second, Texas courts have consistently held that evidence showing that an assault victim was a

11

police officer was legally sufficient to support a finding that he was a public servant. *See McCoy v. State*, 932 S.W.2d 720, 723 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that assault victim was "a public servant within the meaning of the Penal Code" because it was "undisputed" that he was "employed as a police officer by the City of Arlington"); *see also McIlvennia*, 2016 WL 3361185, at *3 (victim's testimony "that he was a patrol officer and peace officer employed with the Killeen Police Department at the time of the assault" was sufficient to show that he "was a public servant within the meaning of the Penal Code"); *Carr*, 2010 WL 2835663, at *4 ("Because there is undisputed evidence that [the victim] was a police officer . . . when the aggravated assault was committed, . . . the evidence is legally and factually sufficient to establish [that he] was a public servant under [S]ection 22.02."); *In re T.F.*, No. 11-06-00179- CV, 2008 WL 187925, at *1–2 (Tex. App.—Eastland Jan. 17, 2008, no pet.) (mem. op.) (rejecting appellant's argument that the State was required to prove that "MISD" was a governmental entity in order to show that the assault victim was a public servant because the evidence showed that the victim was a police officer for MISD and a rational juror would have known that MISD was a school district); *cf. Rexroad v. State*, No. 05-01-01886-CR, 2003 WL 402871, at *2 (Tex. App.—Dallas Feb. 24, 2003, no pet.) (not designated for publication) ("Peace officers and elected governmental officials are considered public servants."). Given this authority, we reject Hucabee's contention that—even though he did not contest the issue—the State was required to present additional evidence showing that the Flower Mound

Police Department was a branch or agency of the City of Flower Mound in order to show that the assault victims were public servants.

Because the record contained undisputed evidence that the assault victims were police officers employed by the Flower Mound Police Department, a rational factfinder could have found that they were public servants. *See McIlvennia*, 2016 WL 3361185, at *3; *Carr*, 2010 WL 2835663, at *4; *T.F.*, 2008 WL 187925, at *2; *McCoy*, 932 S.W.2d at 723. Thus, the evidence is legally sufficient.[6] *See Edward*, 635 S.W.3d at 655–56; *Queeman*, 520 S.W.3d at 622.

We overrule Hucabee's third issue.

### III. CONCLUSION

Having overruled all of Hucabee's issues, we affirm the trial court's judgments.[7]

---

[6]As noted, the record contains overwhelming evidence that the victims were all wearing uniforms with police insignia when the offenses occurred. *See supra* note 4. Thus, a rational juror could have found not only that the assault victims were public servants discharging an official duty, but also that Hucabee knew that they were public servants. *See Hamilton v. State*, Nos. 01-06-00214-CR, 01-06-00215-CR, 01-06-00216-CR, 2007 WL 624700, at *5 (Tex. App.—Houston [1st Dist.] Mar. 1, 2007, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to support finding that appellant knew that assault victim was a public servant because he had arrived at the scene in a marked patrol car and was wearing his police uniform); *see also* Tex. Penal Code Ann. § 22.02(c) ("The actor is presumed to have known the person assaulted was a public servant . . . if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant . . . ").

[7]Shortly before this case was submitted, Hucabee filed a motion to supplement his briefing to address an issue regarding the State's late disclosure of evidence that one of the police officers who testified for the State at Hucabee's trial had been found to have "disregarded the public trust" in a matter unrelated to Hucabee's case. *See*

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 30, 2025

---

Tex. Code Crim. Proc. Ann. art. 39.14(a), (h). Hucabee's counsel openly admitted that the motion was an attempt to avoid a postconviction habeas proceeding, but such a proceeding—not a direct appeal—is the proper mechanism for raising this issue. Because of the timing of the disclosure, the issue was not presented to the trial court (either during trial or in a post-trial motion), so there is no error for us to correct on direct appeal. *See Martinez v. State*, Nos. 02-23-00032-CR, 02-23-00033-CR, 2023 WL 7852122, at *5 (Tex. App.—Fort Worth Nov. 16, 2023, pet. ref'd) (mem. op., not designated for publication) ("To preserve a Michael Morton Act complaint for our review, a party must present the timely, specific complaint to the trial court, and the complaint on appeal must comport with the complaint made in the trial court."); *Rodriguez v. State*, 553 S.W.3d 733, 746 (Tex. App.—Amarillo 2018, no pet.) ("[T]he statutory rights created by [A]rticle 39.14[] are neither systemic [n]or fundamental, [so] they are subject to waiver by failing to properly object to their alleged violation."). Further, there is no evidence of the Article 39.14 violation in the record, and we cannot consider any evidence that is attached to his motion to supplement or that would be attached to his supplemental briefing. *See Thompson v. State*, 612 S.W.2d 925, 928 (Tex. Crim. App. 1981) (holding that articles attached to briefs and not presented in bill of exception were not properly before appellate court as evidence); *Keith v. State*, 232 S.W. 321, 325 (Tex. Crim. App. 1921) ("[A]ffidavits, some of which are found in the record in this case, filed after the trial and after the order overruling the motion for new trial, are but incumbrances and entitled to no place in the record and to no consideration by this court."); *cf. Shiflett v. Douglass*, No. 14-96-00001-CV, 1997 WL 461578, at *12 (Tex. App.—Houston [14th Dist.] Aug. 14, 1997, pet. denied) (not designated for publication) (overruling appellants' complaint based on evidence of perjury that had not been discovered until after the trial court's plenary power had expired because the evidence showing that the witness had perjured himself was not part of the appellate record and therefore could not be considered). Accordingly, we deny Hucabee's motion to supplement his briefing.